306 P.2d 277

Bernice **JONES**, Widow, and Betty Ann Jones, Shirley Jean Jones, Carol Dean Jones, and Richard Allen Jones, Minor Children of Edgar Allen Jones, Deceased, Petitioners,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Insurance Carrier, and Arizona Highway Department, Employer, Respondents.

No. 6182.

Supreme Court of Arizona.

Jan. 15, 1957.

Locklear & Wolfinger, Prescott, for petitioners.

Robert K. Park, Phoenix, for respondent Industrial Commission. John R. Franks, Donald J. Morgan, and John F. Mills, Phoenix, of counsel.

UDALL, Chief Justice.

We issued certiorari, on petition of the widow and four minor children of Edgar Allen Jones, to review an award of the Industrial Commission of Arizona denying them death benefits under the Workmen's Compensation Act, A.R.S. § 23–901 et seq., for his death which they claim arose out of and in the course of his employment.

Edgar Allen Jones had been in the employ of the Arizona Highway Department for about three and one-half years prior to his death. All department employees are covered by compensation insurance carried with the State fund. We shall refer to the widow and minor children as petitioners, the highway department as employer and the Industrial Commission of Arizona as the commission or respondent.

Decedent admittedly died from a coronary occlusion, and it is conceded by the respondent commission that his sudden collapse and death occurred *while in the course of his employment*, i. e., while engaged in the usual and normal performance of his duties with the employer. The narrow question presented is whether, within the meaning of our law, he sustained *an injury by accident arising out of his employment* that caused or contributed to his sudden death.

The facts, which are nowise in dispute, may be summarized as follows: on the morning of June 17, 1955, decedent, along with other members of the State's maintenance crew, was engaged in repairing pavement on the White Spar road approximately 12 or 13 miles south of Prescott. The work shift started at 8 a. m. at which time the crew assembled at the State Highway Yard in Prescott and they were then transported by the employer's trucks to the job site. Their assignment was to apply a light coat of oil to the existing highway surface, this application being made by means of a spray bar which is attached to the oil truck by a hose through which the oil flows under pressure.

The crew was then engaged in spraying oil for an overlay on a banked or "supered" curve on the highway. The actual spraying operations began at about 9 a. m. and customary procedure was followed. On this occasion decedent held the spray bar and directed the spray while the hose was supported by a fellow employee, J. E. Hancock. The spray bar carried by decedent weighed 16½ pounds. This oiling operation required decedent to walk rapidly from side to side and backward on the portion of the road being sprayed. They had been at this work for a period of from four to five minutes, and had sprayed a section of road approximating 75 to 100 feet in length and from nothing to a point approximately 20 feet in width, when decedent Jones collapsed and fell. His associates on the job, who were eyewitnesses to all that occurred, were of the opinion that decedent had slipped on a loose rock or a patch of oil which had leaked from the hose, and it appeared to them that as he started to fall he was trying to right himself.

The witness Hancock, who had been supporting the hose, testified in part:

"* * * when I glanced back, Mr. Jones was falling. I dropped the hose and grabbed for him, but he had already hit the pavement on his left hip and butt. But I did catch him before his head hit the pavement, laid him down and turned the oil off. * * *."

The spray bar did not drop to the ground but came to rest across decedent's lap. First aid was administered but to no avail; decedent never regained consciousness.

An ambulance was immediately radioed for and he was taken to the hospital in Prescott. Dr. McNally's initial report recites: "* * * This man * * * was dead upon arrival. No external evidence of trauma was observed." An autopsy was performed upon the body the following day by Dr. William Marlowe; details as to his findings will be set forth later.

Within ten days after her husband's death the widow, in behalf of herself and minor children, made claim for death benefits. Upon the basis of the record then before it the commission made findings that (a) the decedent died as a result of coronary thrombosis, (b) the disability from which he died was not the result of an injury by accident arising out of and in the course of his employment, and (c) the petitioners were not entitled to death benefits. A petition for rehearing was filed and granted. A full hearing was then held, whereupon the commission entered an order affirming the previous findings and award. Therein it was found that Edgar Allen Jones died "as a result of a preexisting heart condition". Petition for certiorari was timely filed and the matter is now before us for review.

█ The single assignment is to the effect that it was error to deny petitioner's claim for death benefits for the reason that the proof established the fact that death of decedent was caused by an accidental injury arising out of and in the course of his employment. Petitioners place great reliance upon the legal principles enunciated in Phelps Dodge Corporation v. Cabarga, 79 Ariz. 148, 285 P.2d 605, 608, in which they assert a parallel fact situation existed. This test was laid down in that case, viz.:

> "* * * when usual exertion leads to something actually breaking or letting go with an obvious sudden organic or structural change in the body the injury is accidental."

The commission in its brief concedes this court has

> "long since departed from the strict interpretation of the Act that a definite and distinct accident must precede injury in order to constitute a compensable case * * *."

Recognition is taken, no doubt, of our holdings in cases such as In re Mitchell, 61 Ariz. 436, 150 P.2d 355, where the prior holding in Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017, was expressly overthrown; Goodyear Aircraft Corp. v. Industrial Comm., 62 Ariz. 398, 406, 158 P.2d 511; Phelps Dodge Corporation v. De Witt, 63 Ariz. 379, 162 P.2d 605; Vukovich v. Industrial Commission, 76 Ariz. 187, 261 P.2d 1000, and more recently the Cabarga case, supra, wherein some

contrary enunciations in Jones v. Industrial Commission, 70 Ariz. 145, 217 P.2d 589, were disapproved.

■ A search of our decisions would indicate we have previously been confronted with situations where "heart troubles" formed the basis of a claim for compensation in the following cases, viz.: Pierce v. Phelps Dodge Corporation, supra; Hartford Accident & Indemnity Co. v. Industrial Commission, 38 Ariz. 307, 299 P. 1026; Phoenix Bakery v. Industrial Commission of Arizona, 78 Ariz. 188, 277 P.2d 745; Phelps Dodge Corporation v. Cabarga, supra; and, Byers v. Industrial Commission, 80 Ariz. 406, 298 P.2d 1039. It is obvious from a study of these five decisions, of which three claims were allowed, that no hard and fast rule can be laid down that governs all situations as each case must be determined upon its own peculiar facts. However, it is firmly established that for a case to be compensable, there must be a recognizable causal connection between an employee's employment and the accidental injury. See, Emery v. Industrial Commission, 69 Ariz. 87, 210 P.2d 217, and Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710.

Let us then closely examine the facts in the instant case. Decedent Jones was 46 years of age and during his period of employment with the highway department had a good work record. He was rarely ill and at no time had any of his work associates heard him complain of a heart condition. It is apparent from the record that decedent had never been treated for a heart ailment and was wholly unaware of any such condition. Dr. Marlowe testified,

"He evidently had a silent coronary. He had no pain; he evidently didn't know that he had one, and that occasionally happens, so he had no warning."

The doctor was asked:

"Q. Will you state * * * what your findings were in that autopsy insofar as they relate to the cause of death? A. There was hardening of the coronary arteries, particularly the posterior descending branch. And superimposed on this hardening material, which is a calcium deposit, was a blood clot. This clot had evidently been there for a matter of weeks, because it showed evidence of healing and an attempt to recanalize so the blood could go through again.

"Q. Did this blood clot become dislocated? A. No, it was attached firm, firmly attached.

"2. Firmly attached. Could you determine the cause of death from your autopsy? A. It was our opinion that

with this finding, his heart suddenly stopped, causing immediate death.

"Q. Is that called a coronary occlusion? A. Yes, sir."

\* \* \* \* \* \*

"Q. I believe you stated the clot in this instance formed sometime before? A. That's right.

"Q. And that the man had been living with the clot? A. That's right.

"Q. And there was evidence of nature healing the impairment and re-canalizing the blood? A. That is right.

"Q. What else would bring on a heart attack in a man with the condition that Edgar Allen Jones had? A. If it is known that a coronary exists, you limit the physical exertion of that individual early in the disease with bed rest and then in a few weeks gradually resuming activities, getting up to the bath room and to meals, and so forth. *The thing you want to avoid entirely is severe physical exertion. It is an accepted fact that that frequently will cause sudden death.* \* \* \*" (Emphasis supplied.)

The following hypothetical question was asked Dr. Marlowe by petitioner's counsel:

"Q. Doctor, the evidence in this matter shows that immediately prior to the death Edgar Allen Jones was engaged in spraying oil under pressure on the highway with a hose and spray nozzle attached to an oil tank mounted on a truck. This operation required the deceased to walk backwards and from side to side of the road. The portion of the road being sprayed. This operation required the deceased to move fast, much faster than a man ordinarily walks. While he was walking backwards and from side to side holding the spray nozzle the deceased slipped on oil or loose gravel, and for a moment exerted himself trying to regain his balance, but finally fell on the pavement on his left hip, where he expired from this coronary occlusion that you have just testified about. Assuming the circumstances I have just related be true, *what is your opinion as to whether the physical exertion and the fall, or both of Edgar Allen Jones caused or contributed to the heart attack which caused his death?* A. In my opinion it *contributed to the cause of his heart attack and death."* (Emphasis supplied.)

As to physical exertion being a contributing factor to the cause of death, on cross-examination the following questions were asked, and answers given by, Dr. Marlowe, viz.:

"Q. Now, this could happen with any exertion or it could happen with-

out exertion, isn't that correct? A. It could, but it is more apt to happen with exertion, and the more severe the exertion the more likely it is to happen.

\*    \*    \*    \*    \*    \*

"Q. In other words, then, you are testifying that in your opinion *what contributed to the death was the exertion on the part of Mr. Jones immediately prior to his death?* A. *That is correct.* (Emphasis supplied.)

\*    \*    \*    \*    \*    \*

"Q. So that a condition such as you found in Mr. Jones, he could have passed on at any time irrespective of any exertion, is that correct? A. He could have, but exertion certainly increases the possibility of death.

"Q. Would that be any exertion? A. Yes, and the more exertion the more likely it would be. \* \* \*"

It should be noted that the testimony of Dr. Marlowe is the only medical evidence in the case. As is shown by the above questions, the doctor did not waver in his opinion or conclusion that the physical exertion of decedent immediately prior to his demise contributed to the cause of his heart attack and death, i. e., that it aggravated his disease and hastened or accelerated death. We submit that the question of the causal relationship between the accident and death was necessarily within the singular knowledge of medical experts; in such case their findings are conclusive upon the commission. See, Ison v. Western Vegetable Distributors, 48 Ariz. 104, 110, 59 P.2d 649; Craig v. De Berge, 67 Ariz. 168, 172, 193 P.2d 442; Caekos v. Stanley Fruit Co., 55 Ariz. 72, 98 P.2d 471. The commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science. Yet that is exactly what has been done in the instant case, for the findings of the commission are a complete repudiation of the only medical evidence in the record.

There is but little, if any, disagreement between the parties as to the governing principles of law. The whole disagreement comes from the application of the law to the facts in this case. We have carefully read and reread the recent Cabarga decision, 79 Ariz. 148, 285 P.2d 605, authored by Chief Justice LaPrade, and it is our considered opinion that in fact and in principle it is indistinguishable from the instant case. We rest our decision on the Cabarga case, supra; we hold that the elements of "accidental injury" as defined therein were established by undisputed testimony.

Since, in our judgment, there is no reasonable evidence supporting the findings of the commission, the award is set aside.

WINDES, PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.