371 P.2d 888

Elmer PAULLEY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and McGraw-Edison Company (International Metal Products, Division of McGraw-Edison Company), Respondents.

No. 7304.

Supreme Court of Arizona,

En Banc.

May 31, 1962.

Ira J. Bergman and Roy R. Carson, Phoenix, for petitioner.

Donald J. Morgan, Phoenix, for respondent, The Industrial Commission of Arizona.

Shimmel, Hill, Kleindienst & Bishop, Phoenix, for respondent, Employer· McGraw-Edison Company (International Metal Products, Division of McGraw-Edison Company).

Edward E. Davis, C. E. Singer, Jr., Lorin G. Shelley and Ben P. Marshall, Phoenix, of counsel.

UDALL, Vice Chief Justice.

By certiorari petitioner seeks review of an award denying him compensation for disability due to the loss by amputation of his right leg.

Petitioner suffered from and had been treated for diabetes since 1950. He began working for International Metal Products, Division of McGraw-Edison Company in Phoenix in 1956. Originally classified as a press operator, petitioner was reclassified as a material handler and transferred to the scrap yard on July 11, 1960. There his duties consisted of moving barrels and sweeping and picking up pieces of cardboard and metal scraps.

In performing these tasks petitioner was necessarily on his feet walking around the concrete yard almost all of the time. During the period in question (July 1960) the yard temperature was often about 110°. And this heat was intensified by reflection from the shining metal scraps strewn about the yard.

Upon returning home at the end of the working day of July 14, 1960, petitioner noticed that a blister had formed on the ball of his right foot. The next morning he reported to the plant nurse who, after learning of his diabetic condition, advised petitioner to see his physician, Dr. Brewer, as soon as possible. Dr. Brewer was first able to see petitioner on July 16th at which time the blister was cleaned, dressed and protected by a foam rubber doughnut. Petitioner informed Dr. Brewer that he was soon to go on vacation to Kentucky, whereupon the doctor admonished him to keep the blister clean and to watch carefully for any signs of infection. At this time (July 16, 1960) petitioner's "diabetes was well controlled" and his blood circulation in the lower extremities "was good."

Wearing the bandage and doughnut petitioner continued to work in the yard until July 29, 1960 at which time he and his wife left Phoenix by bus for a two week vacation in Kentucky. On Monday (August 8th) of the second week of vacation petitioner noticed that the blister had broken. He washed and redressed the opening—but on Friday, August 12th, the blister had peeled off and in its place was a small black spot. Alarmed, petitioner immediately instructed his wife to secure bus reservations for the trip home. They arrived in Phoenix on the night of August 16th.

The next morning, August 17th, Dr. Brewer examined petitioner's foot and found an area of gangrene where the blister had been. "The entire foot * * * was swollen, and hot, red." On Dr. Brewer's orders petitioner was hospitalized the same day and on August 26, 1960 his leg was amputated below the knee

On August 30, 1960 the commission, after informal hearing, entered an award denying compensation under the Occupational Disease Law on the ground that the blister on petitioner's foot "was not due to the use of tools or appliances." [1] Instead the commission found "that the blister which developed on the bottom of applicant's right foot was caused from working on hot concrete all day."

Thereafter petitioner filed a workmen's report and an application for benefits under the Workmen's Compensation Act. A full hearing was held on November 29, 1960 after which on February 9, 1961 the commission entered its "Decision Upon Rehearing and Order Affirming Previous Findings [of August 30, 1960] and Award

1. A.R.S. § 23-1102 (1956) includes within the category of "occupational diseases:" "3. Blisters or abrasions due to use of tools or appliances in employment, but no compensation shall be payable unless the employee promptly, not later than the end of the shift during which such blister or abrasion first develops, reports it to his employer, or designated agent of such employer, if either are available, and submits to such medical treatment therefor as required and furnished by the employer."

[for noncompensable claim.]". Petitioner then applied for a rehearing and on March 20, 1961 the commission entered its "Amended Decision Upon Rehearing."

On appeal petitioner contends that he is entitled to benefits under the Workmen's Compensation Act only and argues that the following findings in the commission's decision of March 20, 1961 are not supported by substantial evidence:

"3. That * * * applicant did not sustain a personal injury by accident arising out of and in the course of his employment within the meaning of the Workmen's Compensation Act.

"4. That said applicant's disablement, to-wit: loss of right leg below the knee, was not the result of any accident or compensable occupational disease, but due to pre-existing condition and applicant's failure to promptly seek medical care when his condition became critical."

A.R.S. § 23–1021, subd. A provides in pertinent part that "Every employee coming within the provisions of this chapter who is *injured* * * * *by accident* arising out of and in the course of his employment * * * shall be entitled to * * * compensation * * *." (Emphasis added.) The commission's brief on appeal is essentially limited to the assertion " * * * that there was no unusual, undesigned, unexpected event in the case; that nothing took place on or in the body in the way of a sudden, disabling disarrangement * * *" that would qualify as an injury "by accident." And in support of this contention the commission apparently relies on the rule of Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017 (1933).

In Pierce this court reviewed an award denying compensation to the widow of a mine foreman whose death from acute myocarditis " * * * was accelerated at least to some degree by the ordinary and usual conditions of the work * * * but not by any sudden or extraordinary strain or fortuitous happening." 42 Ariz. at 441, 26 P.2d at 1019. Inclusion of the preposition "by" in the statutory phrase was held to be conclusive of the legislature's intent that " 'accident' refers to the cause of the injury and not to the injury itself." 42 Ariz. at 445, 26 P.2d at 1021. Accordingly, a compensable industrial injury had to be the result of some unexpected external event which was separate and distinct from the injury itself. Such an ascertainable "event" being absent the award was affirmed.

In thus emphasizing the dictionary meaning of "by accident" Pierce departed from the theretofore accepted meaning of that phrase as interpreted by the House of Lords in Fenton v. Thorley & Co., (1903) A.C. 443 and again in Clover, Clayton & Co. v. Hughes (1910) A.C. 242. Fenton suffered a rupture while attempting to move a stuck wheel on a machine, and Hughes

died from an aneurism which burst while he was tightening a nut with a spanner. In neither case was there any sudden, unexpected and external event which could be isolated and identified as the "cause" of the injury. Nor were either Fenton or Hughes exerting themselves in an extraordinary manner when the injuries occurred. But compensation was held proper in both instances.[2] Thus, Professor Larson writes that:

> "Well before any American states copied the 'injury by accident' terminology of the British Act, it was settled beyond question in England that such a claim was compensable, on the theory that, although the cause was routine and not accidental, the effect on the employee was unexpected and catastrophic, and therefore accidental." 1 Larson's, Workmen's Compensation Law, § 38.10 (1952) at 517.[3]

Eleven years after Pierce an award of death benefits to the widow of a telephone company repairman who died of carbon tetrachloride poisoning was sustained in Matter of Mitchell, 61 Ariz. 436, 150 P.2d 355 (1944). Mitchell had used the carbon tetrachloride in cleaning certain equipment and over a period of time had absorbed too much. Concluding that there was sufficient evidence to establish the causal relationship between use of the solution and Mitchell's death this court went on to hold that:

> "* * * anything we may have said in the Pierce case to the contrary notwithstanding * * * there was an injury by accident in this case within the meaning of the Arizona Law, *as now interpreted*, in that the inhalation by the deceased of the fumes from the use of the poisonous carbon tetrachloride, under the circumstances heretofore stated, produced *effects that were not intended, foreseen or expected*." 61 Ariz. at 452–453, 150 P.2d at 361. (Emphasis added.)

2. Lord Lindley, concurring in Fenton, observed that:
   "Speaking generally, but with reference to legal liabilities, an accident means any unintended and unexpected occurrence which produces hurt or loss. But it is often used to denote any unintended and unexpected loss or hurt apart from its cause; and if the cause is not known the loss or hurt itself would certainly be called an accident. The word accident is also often used to denote both the cause and the effect, no attempt being made to discriminate between them. * * * In this Act of Parliament the word is used in a very loose way." (1903) A.C. at 453

3. "At the time the American definitions were borrowed from it, the English law had become settled that 'by accident' included all unexpected work-connected injuries, whether or not the precise cause was unexpected. Specifically, it was clear that an employee was entitled to compensation for injuries resulting from exertion or strain in performing his ordinary duties." Gradwohl, Nebraska Workmen's Compensation For Aggravation Of Pre-existing Infirmities By Exertion Or Strain, 41 Neb.L.Rev. 101, 106–07 (1961).

In Mitchell this court also pointed out that the Pierce decision had given " * * * too little weight * * * to the peculiar and appropriate meaning in the law * * * of the phrases such as 'injured * * * by accident' and 'accident' appearing in our compensation law, which phrases had a well-defined and well-understood meaning at the time of the enactment of our Workmen's Compensation Act." [4]

The Mitchell interpretation of "injury by accident" has been followed by this court in numerous decisions since 1944. See Phelps Dodge Corp. v. DeWitt, 63 Ariz. 379, 162 P.2d 605 (1945) (affirmed award for back injury incurred while doing routine lifting); Vukovich v. Industrial Commission, 76 Ariz. 187, 261 P.2d 1000 (1953) (set aside award denying death benefits to widow of construction worker who died of heat stroke); Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277 (1957) (set aside award denying death benefits where coronary occlusion of highway worker resulted from ordinary exertion on the job); Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600 (1961) (set aside award of noncompensable claim to construction worker who suffered from pneumonia brought on by escaping fumes from defective tractor exhaust system).[4a]

In 1955 the question was apparently settled once and for all by the decision of this court in Phelps Dodge Corp. etc. v. Cabarga, 79 Ariz. 148, 285 P.2d 605 (1955). There we affirmed an award granting death benefits to the widow and children of a slag switchman who died from a coronary occlusion occasioned by routine exertion during the course of his employment. To the contention that there had been no discernible mishap or "accident" which caused the injury we replied that:

"In * * * [Mitchell] we repudiated the doctrine of the Pierce case wherein it was determined that compensation was only allowable for injury or death produced or contributed by *an* accident. It was determined and held that the death was accidental. The about-face was far from being capricious in that the new interpretation was in harmony with the early English cases on the subject and particularly with the declaration in Clover, Clayton & Co. v. Hughes (1910), A.C. 242, 3

---

4. 61 Ariz. at 450–51, 150 P.2d at 361. It was also noted in Mitchell that the Pierce decision failed to take account of and consider the intent underlying the broadly worded constitutional mandate that: " * * * compensation shall be * * * paid * * * if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, *is caused in whole, or in part, or is contributed to,* by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof * * *." ARIZ.CONST. art. 18, § 8, A.R.S. 61 Ariz. at 451, 150 P.2d at 361. (Emphasis added.)

4a. Noted at 3 Ariz.L.Rev. 316 (1961).

B.W.C.C. 775, wherein Lord Mac-Naghten said that ' * * * "injury by accident" meant nothing more than "accidental injury",' and the majority of cases in this country following the English rule. * * * *This majority with which we concur* hold that when usual exertion leads to something actually breaking or letting go with an obvious sudden organic or structural change in the body the injury is accidental." 79 Ariz. at 153, 285 P.2d at 608. (Emphasis added.)

▮ Thus it is strange to find the commission in the instant case offering Pierce as the correct interpretation of "injury by accident." [5] Admittedly several past decisions contain language inconsistent with the spirit if not the holding of the Cabarga case. See Jones v. Industrial Commission, 70 Ariz. 145, 217 P.2d 589 (1950); [6] Hartford Accident & Indemnity Co. v. Industrial Commission, 66 Ariz. 259, 186 P.2d 959 (1947). For this reason we again announce that Arizona follows the English and now majority American view that an injury is caused "by accident" when either the external cause or the resulting injury itself is unexpected or accidental. This construction of the phrase "injury by accident" is most likely to effectuate " * * * the evident purpose of the law that those covered by the act who are injured while engaged in industrial work are to be compensated." Goodyear Aircraft Corp. v. Industrial Commission, 62 Ariz. 398, 402, 158 P.2d 511, 513 (1945).

▮ In this case the commission originally found that petitioner's blister "was caused from working on the hot concrete all day." So far as petitioner is concerned the blister itself was certainly accidental. Moreover, it cannot be doubted that a blister is anything but an "injury" to the human body. As stated in a recent New York case:

"The raising of a blister by excessive walking, or even by normal walking, if the activity and the blister are causally related is an accident in the true sense and within the statute. It is an

5. Especially is this so in light of the post-Cabarga brief filed by the commission in Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277 (1957). It was noted in the Jones opinion that: "The commission in its brief concedes this court has 'long since departed from the strict interpretation of the Act that a definite and distinct accident must precede injury in order to constitute a compensable case * * *.' " 81 Ariz. at 355, 306 P.2d at 279.

6. In Jones an award denying compensation for loss of a leg by amputation was affirmed. Petitioner had been suffering from arterio-sclerosis. Adopting the view that the blood clot which necessitated the amputation was caused by petitioner's standing in cold irrigation water for extended periods of time rather than by bruises this court ruled there had been no "accident" within the meaning of Pierce. Jones was expressly disapproved in Cabarga. 79 Ariz. at 154, 285 P.2d at 609.

unexpected, and specific, injury due to the work activity."

Walters v. U. S. Vitamin Corp., 11 A.D.2d 280, 282, 203 N.Y.S.2d 401, 403 (1960).[7] Nor do we interpret the inclusion of "blisters and abrasions" within the Occupational Disease Act as indicative of legislative intent to exclude blisters from qualifying as industrial injuries under the Workmen's Compensation Act. Accordingly, we hold as a matter of law that petitioner here sustained an "injury * * * by accident" within the meaning of the Workmen's Compensation Act.

Petitioner's second assignment of error—that there is no substantial evidence to support the commission's finding that the loss of his leg was "due to pre-existing condition and applicant's failure to promptly seek medical care when his condition became critical"—is unanswered in the commission's brief. We might, therefore, without more treat such an omission as an admission of the correctness of the assignment. Cf., Arnett v. Hardwick, 27 Ariz. 179, 182, 231 P. 922, 923 (1925). Quite aside from the commission's failure to answer, however, there are several good rea-sons which compel agreement with this second contention of the petitioner.

"The injury embraces all the results which flow directly from it." Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600, 604 (1961). " * * * [I]n the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." Murray v. Industrial Commission, 87 Ariz. 190, 199, 349 P.2d 627, 633 (1960). Doctor Brewer testified that petitioner's diabetes was well controlled on July 16, 1960 (two days after the accident) but that when he next saw petitioner on August 17th gangrene had set in where the blister once had been. He further indicated that a diabetic is much more susceptible to infection and that in petitioner's case there was "a definite relationship between the blister and the ultimate development of gangrene" which necessitated amputation.

There was no other medical evidence in the case. And where the causal relationship between an industrial injury and the

---

**7.** In Walters the court affirmed an award of compensation to a diabetic claimant who suffered a blister while walking in the course of his employment. The blister broke, became ulcerated and was "the cause of further disability." See Industrial Commission of Ohio v. Mounjoy, 36 Ohio App. 476, 478, 173 N.E. 263, 264 (1930) wherein the court noted that:
"If the decedent suffered a blister on his foot because of having to walk over rough ground, in the course of his employment, there can be no question that that would be an injury within the meaning of the Workmen's Compensation Law * * *."

resulting disability is "within the singular knowledge of medical experts * · * * their findings are conclusive upon the commission. * * * The commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science." Jones v. Industrial Commission, 81 Ariz. 352, 358, 306 P.2d 277, 281 (1957). See also Revles v. Industrial Commission, 88 Ariz. 67, 352 P.2d 759 (1960).

The award is set aside.

BERNSTEIN, C. J., and STRUCK-MEYER and JENNINGS, JJ., concur.