480 P.2d 358

**MONTGOMERY WARD CO., Inc.,**
**Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona,**
**Respondent,**

**Mary V. Fuller, Respondent Employee.**

**No. 1 CA–IC 301.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 11, 1971.

Review Denied March 30, 1971.

Estes, Browning & Zlaket by William D. Browning, Tucson, for petitioner.

Lawrence Ollason, Tucson, for respondent employee.

William C. Wahl, Jr., Counsel, Donald L. Cross, Former Chief Counsel, Phoenix, for respondent Industrial Commission of Ariz.

HAIRE, Judge.

On this appeal by certiorari the petitioning self-insured employer complains of an Industrial Commission decision which awarded compensation to the respondent-employee for a disabling rheumatoid arthritic disease.

At the time the employee, Mrs. Fuller became disabled she was approximately 55 years old. Her testimony is that prior to 1965 she had held only one job—employment as a real estate saleslady for a short period in 1956. For her second venture into the employment world she sought work from the petitioner and was employed in June 1965 as a part-time telephone switchboard operator (approximately 4 hours, 5 days a week) and worked at that position for approximately 8 months before quitting in February 1966.

On December 6, 1965, she first consulted her physician, Dr. O. J. Farness, concerning the arthritic pains she had developed. She told him that approximately 6 months earlier she had awakened late at night with severe pain in her left shoulder, and that thereafter the areas of pain "jumped around" to various joints. At the December 6, 1965 meeting with her doctor, he took some tests, but there "wasn't too much to find in the joints at that particular examination. It had all quieted down by then." One week later, Dr. Farness again examined Mrs. Fuller, who at that time was suffering from acute pain in her right hand, and later he consulted with her by telephone on December 30, 1965, at which time she advised him that she had had a bad night with pain in her left wrist, knee and shoulder. Dr. Farness then referred her to Dr. Harry Thompson, a specialist in rheumatology.

Dr. Thompson first saw Mrs. Fuller on February 18, 1966, and continued treating her thereafter. His diagnosis was that she

was suffering from a moderately severe rheumatoid arthritis. Inasmuch as rest is an essential part of the treatment for rheumatoid arthritis, he advised her to immediately quit work. Actually, because of her condition Mrs. Fuller was not working at the time she first saw Dr. Thompson, having left her job a few days earlier on February 15, 1966. She did not return to work thereafter.

While Mrs. Fuller was employed as a part-time telephone switchboard operator, she generally worked a 4 hour evening shift. Her duties required the repetitive use of her hands and arms in pulling and inserting plugs attached to cords so as to make appropriate telephone connections. The medical evidence was uncontradicted that Mrs. Fuller's rheumatoid arthritis was not directly or indirectly caused by her employment. There was some testimony by Mrs. Fuller as to the temperature and breeziness of the room in which she worked. However, the medical testimony indicated that while cold, temperature and changes in barometric pressure may affect the way a person with rheumatoid arthritis *feels*, these factors do not in any way *cause* the disease itself. The medical testimony was equally uncontradicted that repetitive use of joints afflicted with rheumatoid arthritis "aggravates" rheumatoid arthritis, causing increased and prolonged pain and discomfort, and that unquestionably Mrs. Fuller's activity in her employment, as well as her other normal activities, aggravated her arthritic disease in this manner. There is no claim made, nor is there any evidence indicating, that Mrs. Fuller's employment activities converted a latent physical disease into an active condition, nor made symptomatic that which was previously asymptomatic.

Mrs. Fuller does not point to any specific external or internal happening or event which would normally be considered as an "injury by accident", but rather, in effect, takes the position that her continued work activity, after the progress of her disease made her work painful and uncomfortable, constituted an injury by accident within the gradual injury concept enunciated in Reilly v. Industrial Commission, 1 Ariz. App. 12, 398 P.2d 920 (1965). Without question under prior Arizona decisions exposure to deleterious conditions associated with one's employment resulting in a disabling injury or disease does constitute an injury by accident, even though there is no *sudden* external event or *sudden* unintended and unexpected internal result. *See* Reilly v. Industrial Commission, *supra* (repeated continuous exposure to lint, resulting in emphysema); Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600 (1961) (pneumonia developed as the result of inhaling fumes from a cracked exhaust pipe); English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815 (1951) (inhalation of fumes over a period of time); In re Mitchell, 61 Ariz. 436, 150 P.2d 355 (1944) (inhalation of carbon tetrachloride fumes). However, in each of the above cases the exposure which resulted in disability was definitely work-connected and peculiar to the employment conditions involved, whereas in the case at hand the activities constituting the claimed "gradual injury" were not essentially different in kind from the claimant's normal non-employment activities, nor did they cause the arthritic condition here involved. Here, claimant's disease progressed to the point where she could no longer do her work comfortably or without pain. However she continued her work and thus "aggravated" her condition. While we doubt that the circumstances of this case involve an injury by accident, we need not decide the question because in our opinion there is another failure in Mrs. Fuller's proof which requires that the award be set aside.

The principle is well established that a preexisting disease or infirmity of an employee does not disqualify that employee from compensation where an industrial injury, operating on that preexisting disease or infirmity, produces further disability. Gullick v. Industrial Commission, 94 Ariz. 237, 383 P.2d 123 (1963);

Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960); Jones v. Industrial Commission, 70 Ariz. 145, 217 P. 2d 589 (1950); Horn v. Industrial Commission, 68 Ariz. 323, 205 P.2d 1198 (1949); 1 A. Larson, The Law of Workmen's Compensation § 12.20, at 192.23 (1968). However, the claimant has the burden of showing that the claimed additional disability was in fact caused or contributed to by the work-related injury and not merely a result of the natural progression of the preexisting disease. Wheeler v. Industrial Commission, 94 Ariz. 199, 382 P.2d 675 (1963); Collins v. Industrial Commission, 3 Ariz.App. 107, 412 P.2d 282 (1966); 1A A. Larson, The Law of Workmen's Compensation § 38.83, Note 21, at 622.31–622.33 (1967). In this case while there is evidence that Mrs. Fuller was completely disabled by rheumatoid arthritis at the time she quit work and at the time of the subsequent hearings, there is no evidence that her *disability* was caused in whole or in part by her work activities rather than by the natural progression of the disease. Dr. James L. Parsons testified that the claimant's work was not a precipitating cause of her flare-up of rheumatoid arthritis. On the other hand, while both Dr. Farness and Dr. Thompson testified that in their opinion Mrs. Fuller's work activities did aggravate her arthritis by increasing and prolonging the pain and swelling in her arthritic afflicted joints, there is no testimony from which it can be inferred that the work activity actually caused a disability which would not have existed separate and apart from the work activities involved.[1] The situation here where Mrs. Fuller's arthritic condition brought her to the position so that her ordinary work activities caused aggravating pain and swelling is not at all comparable to the fact situations involved in cases cited in support of her claim. In Paulley v. Industrial Commission, 91 Ariz. 266, 371 P.2d 888 (1962) the claimant's preexisting diabetes did not affect in any way the performance of his duties, but did affect his body's ability to control infections. The disability was clearly caused by infection of a work-caused heel blister. In Schreven v. Industrial Commission, 96 Ariz. 143, 393 P.2d 150 (1964) the claimant's congenital back deformity had not given him any trouble or caused any disability until he was involved in an industrial accident which caused the prior congenital problem to become disabling. In Murray v. Industrial Commission, *supra*, again an industrial injury activated a previously nondisabling back condition.

The evidence presently before the Commission is insufficient to support a finding of disability resulting from an injury arising out of and in the course of claimant's employment.

The award is set aside.

JACOBSON, P. J., and EUBANK, J., concur.

[1]. A reading of the complete transcript of the medical testimony indicates that the term "aggravates" or "aggravation" was used by the medical witnesses to indicate that the activities involved produced increased or prolonged pain and swelling. There is no evidence as to how much prolonging effect this aggravation had or as to its effect upon disability, if any. At one of the hearings in this matter, the referee, in his questioning of Dr. Thompson, attempted to guide claimant's counsel into the crucial area of the relation of this aggravation to disability over and beyond that caused by the natural progression of the disease. However, claimant's counsel for some reason declined to pursue this line of questioning.