514 P.2d 758

**MONTGOMERY WARD & COMPANY, INC., Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Mary V. FULLER, Respondent Employee.**

No. I CA–IC 823.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 16, 1973.

Rehearing Denied Nov. 27, 1973.

Review Denied Dec. 18, 1973.

Estes, Browning & Zlaket by William D. Browning, Tucson, for petitioner.

Rabinovitz & Minker by Bernard I. Rabinovitz, Tucson, for respondent employee.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

OPINION

JACOBSON, Chief Judge, of Division 1.

This second review of an Industrial Commission award requires a determination of whether the factual deficiencies noted in our previous opinion [1] have been cured by a hearing held subsequent to the issuance of our mandate.

The facts underlying the employment of respondent Mary V. Fuller and her physical infirmities have been set forth in our previous opinion in this matter and need not be reiterated in extensive detail here. Suffice it to say that Mrs. Fuller was employed by petitioner, Montgomery Ward & Co., Inc. for approximately eight months as a part-time switchboard operator, commencing in June, 1965. At that time she already suffered from rheumatoid arthritis. There is no contention that this condition was caused directly or indirectly by her employment.

As we noted in our previous opinion:

"On the other hand, while both Dr. Farness and Dr. Thompson testified that in their opinion Mrs. Fuller's work activities did aggravate her arthritis by increasing and prolonging the pain and swelling in her arthritic afflicted joints, there is no testimony from which it can be inferred that the *work activity actually caused a disability which would not*

I. *See* Montgomery Ward Co. v. Industrial Commission, 14 Ariz.App. 21, 480 P.2d 358 (1971).

*have existed separate and apart from the work activities involved.*" Montgomery Ward Co. v. Industrial Commission, *supra* note 1, at 23, 480 P.2d at 360. (Emphasis added; footnote omitted.)

As a result of this evidentiary deficiency[2] this court set aside the award finding that Mrs. Fuller suffered from a disability resulting from an injury arising out of the course of her employment. Following the issuance of our mandate the Commission issued an award denying benefits to Mrs. Fuller. This award was timely protested by a request for hearing which was held on December 14, 1971. At this hearing the only medical evidence presented was by Dr. Harry E. Thompson, who had also testified at hearings held prior to our first opinion. Following the hearing, the hearing officer entered his opinion finding that Mrs. Fuller had suffered a compensable injury arising out of and in the course of her employment and awarded benefits. This opinion was affirmed by the Commission and petitioner again sought review in this court by way of writ of certiorari.

It is the claimant's position, using our prior opinion as a guide in examination, that Dr. Thompson's additional testimony has cured the prior evidentiary deficiency. Conversely, petitioner contends that the additional medical evidence adduced on this point is so equivocal and speculative that it did not cure the deficiency. The parties' conflicting contentions require a review of Dr. Thompson's testimony, it being conceded by both parties that the resolution of this question is purely within the realm of medical evidence. Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277 (1957).

Dr. Thompson on one occasion testified:

"Q. Now, one final question. The facts, as we now [sic] them in this case, is [sic] that although Mrs. Fuller may have had arthritis prior to her employment with Montgomery Ward, that certainly the condition did not prevent her from working prior to going to work for Montgomery Ward. Those being the facts, would you have an opinion based upon a reasonable medical probability as to whether or not the aggravation of the arthritis by her employment caused or contributed to her disability?

"A. I think the answer is that it did."

It would appear that this testimony is definite enough. However, the doctor also testified:

"Q. Okay. Would you have an opinion, Doctor, based upon a reasonable medical probability as to whether or not the work that she was engaged in, the work activity actually caused a disability which would not have existed or which she would not have had at that particular time were it not for the work?

"A. *You can't really answer that question one way or the other because these arthritic cases are very much different.* As a general rule with early rheumatoid arthritis starting we try to stop their physical activities, whether it is housework or physical work of any sort. We do that primarily for the reason that many of these cases quiet down with simple rest and aspirin. We have no idea which patient will go ahead and get worse even if we do that, and to start some other therapy. (Emphasis added.)

"Q. Well, perhaps I didn't make my question clear. My question is whether or not her working under the conditions that have been described for you, brought on a disability which would not have occurred at that particular point in time had she not been engaged in this work?

"A. I have to qualify that answer because it could be a yes or no, and her physical disability and her arthritis was [sic] definitely aggravated by work, *but whether her continuing the work may*

2. At the time of our previous opinion we expressed doubts whether the facts of this case involved an injury by accident, compensable under the Workmen's Compensation Act. We again decline to decide this issue.

*have prolonged this or made it worse is pretty hard to say.* I think under the circumstances that I would have a *feeling,* and this would be a *personal opinion,* that it may have in her case, because when she stopped work and was treated symptomatically, why, the disease continued." (Emphasis added.)

Again Dr. Thompson testified:

"Q. Would you have an opinion, Doctor, again based upon a reasonable medical probability, as to whether or not the employment and the conditions thereof accelerated the onset of symptoms that more than likely would have eventually occurred?

"A. Yes.

"Q. What is your opinion?

"A. My opinion is yes, I think so.

"Q. And why do you say that, Doctor?

"A. Pardon?

"Q. What is the basis for that opinion?

"A. Well, in reference to my previous answer is that we have had a chance to observe her and she was getting worse with her work and she happened to fall into this class of people who, even if she stopped work, she continued to get worse. So, I think it is *definitely within the realm of possibility,* but we have no way of picking these people out of thin air and saying which one is going to get better if they stop working and which ones won't." (Emphasis added.)

Dr. Thompson also stated:

"Q. Okay. Doctor, do you have an opinion as to whether or not this aggravation was temporary or permanent?

"A. I think in view of Mrs. Fuller's subsequent history the aggravation was definitely contributing to the continuation of her arthritis.

"Q. You don't think that any effects of that aggravation subsided with the passage of time and that the rest was the natural progression of her disease? Is that what you are telling us?

"A. No. You are putting my words differently. Would you rephrase that again?

"Q. Well, would the reporter read the question back.

(At this time the last question propounded by Mr. Browning was read back to the witness.)

"MR. BROWNING:

"Q. I don't mean to mislead you or anything, Doctor, I am just trying to save us time.

"A. I don't think I can answer that. I think I can say definitely as her physician and as an expert on this, that her arthritis was aggravated and that it was projected eventually into the course of her disease. I don't think you can say there is any such thing as natural course of the disease.

"Q. Well, would it be a correct statement, Doctor, to say that *you can't tell us to a reasonable medical certainity or probability, one way or the other whether the affect of aggravation of her work caused her progression of the disease.*

"A. Yes, I think I can in this case, since I have had a chance to observe her subsequently.

"Q. You mean merely because she did get worse?

"A. Because she did get worse.

"Q. And if, Doctor, the rheumatoid arthritis condition had been symptomatic prior to June of '65, when she became employed at Montgomery Wards, would that alter or change your opinion?

\*     \*     \*     \*     \*     \*

"THE WITNESS: I think it would.

"MR. BROWNING:

"Q. And to what extent, Doctor, and what degree?

"A. If there had been pre-existing rheumatoid arthritis and she would have still have the same aggravation of the

arthritis, it would change my basic opinion, if that is what you are asking."

The doctor also stated, using his previous testimony given in prior hearings as a basis for cross-examination:

"Question. 'Would you say that any aggravation using the material as you define it, that any aggravation that Mrs. Fuller received because of her employed [sic] has ended?'"

"Answer. *'Well, you can't answer that definitely.'*"

"Now, are you telling us now that you can answer it definitely in the light of the progress of the disease?

"A. You asked about aggravation?

"Q. Yes, sir.

"A. An aggravation and arthritis are two entirely different things. Here arthritis was aggravated by her work as far as I know and it is *very difficult or impossible* to say how much carry over you would have in these people.

"Q. And that would be true in Mrs. Fuller's case?

"A. That is correct." (Emphasis added.)

The doctor was cross-examined as to his prior testimony in this matter.

"Q. [prior testimony]. Well, if he saw her for the first time then, say. In that six-week period of four hours a day in normal business days, would you say that that would be such great aggravation that she would not have recovered from it?

"A. I have no way of judging that and I would have to answer that generally, because I didn't see her when this thing started or when she was working. Now if you want me to make a general statement, I think it could or it could not. I think it depends entirely on the severity of the joint damage and disease and how much effect that work had on her joints."

*The doctor stated he would still agree with that answer.* Again, when examined concerning this previous testimony:

" 'Q. Her disability today, is it substantially what it would have been whether she was employed at Montgomery Wards or not?

" 'A. I can't really answer that accurately because I have no idea of how she was when she was working. You have to—I would have to give you an opinion, which probably wouldn't be yes or no.'"

The doctor stated his above answer was still valid.

Taking this testimony in the light most favorable to sustain the award, we must conclude that Dr. Thompson was of the opinion that Mrs. Fuller's working conditions and activities aggravated her arthritic condition and that this aggravation became part of her general condition, but that he is unable to state to any degree of medical certainty that this aggravation left her in any worse condition than if the aggravation had never occurred.

Because of this conclusion, we find that the evidentiary defect noted in our previous opinion has not been cured and the award must again be set aside.

Award set aside.

EUBANK, P. J., and HAIRE, J., concur.