558 P.2d 960

MONTGOMERY WARD AND COMPANY, INC., Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Mary V. Fuller, Respondent Employee.

No. 1 CA–IC 1248.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 3, 1976.

Rehearing Denied Dec. 7, 1976.

Petition for Review Denied Jan. 4, 1977.

Browning & Wilson-Druke by William D. Browning, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Rabinovitz, Minker & Dix, P. C. by Bernard I. Rabinovitz, Tucson, for respondent employee.

## OPINION

EUBANK, Judge.

This third review of an Industrial Commission award requires a determination of whether the factual deficiencies noted in *Montgomery Ward & Co., Inc. v. Industrial Commission*, 14 Ariz.App. 21, 480 P.2d 358 (1971), and in *Montgomery Ward & Co., Inc. v. Industrial Commission*, 20 Ariz.App. 587, 514 P.2d 758 (1973) have been cured by a hearing, held subsequent to the issuance of our last mandate.

The facts are set out in detail in our first opinion and need not be repeated here, except to say that Mrs. Mary Fuller was employed by the petitioner, Montgomery Ward, in June 1965 as a part-time telephone switchboard operator and worked at that position for approximately eight months. In December 1965 she contacted Dr. O. J. Farness regarding arthritic pains. He referred her to Dr. Harry E. Thompson, a specialist in rheumatology who diagnosed her complaint, in February 1966, as moderately severe rheumatoid arthritis. Mrs. Fuller filed a claim with the Commission alleging that her rheumatoid arthritis re-

sulted from her employment. She was awarded compensation two times previously and both times this Court set the awards aside. *See* both *Montgomery Ward & Co., Inc. v. Industrial Commission*, supra.

In our first opinion it was not necessary to reach the question whether "an injury by accident" was involved. Instead the matter was resolved by the fact,

. . . there is no evidence that her *disability* was caused in whole or in part by her work activities rather than by the natural progression of the disease. . . ." (14 Ariz.App. at 23, 480 P.2d at 360)

and we held:

The evidence presently before the Commission is insufficient to support a finding of disability resulting from an injury arising out of and in the course of claimant's employment. (14 Ariz.App. at 23, 480 P.2d at 360)

In our second opinion, we reviewed the additional medical evidence of Dr. Harry E. Thompson at the hearing held on December 14, 1971, and said:

Taking this testimony in the light most favorable to sustain the award, we must conclude that Dr. Thompson was of the opinion that Mrs. Fuller's working conditions and activities aggravated her arthritic condition and that this aggravation became part of her general condition, but that he is unable to state to any degree of medical certainty that this aggravation left her in any worse condition than if the aggravation had never occurred.

Because of this conclusion, we find that the evidentiary defect noted in our previous opinion has not been cured and the award must again be set aside. (20 Ariz. App. at 590, 514 P.2d at 761)

Following the issuance of our mandate in the second opinion, the matter was returned to the Commission after which a formal hearing was held in Tucson on July 2, 1974. By stipulation no additional lay witnesses were called, their previous testimony at the December 14, 1971 hearing being used instead. The only medical witness to testify was Dr. Harry E. Thompson, who had testi-

fied at the prior hearings. At the conclusion of his testimony the matter was taken under advisement, and on October 1, 1974, the Commission issued its Decision upon Hearing and Findings and Award for Compensable Claims awarding Mrs. Fuller both accident and compensation [1] benefits.

For review, petitioner raises the same three questions that it raised in each of the prior reviews.

1. Can Award of compensation be sustained where there is no evidence, based on reasonable medical certainty or probability, that the condition suffered from was connected to the employment?

2. Can an Award be affirmed, assuming that employment aggravated a pre-existing condition, where there is no evidence that such aggravation was permanent or was responsible for the present condition of claimant?

3. Is a disability caused by disease compensable where there is no evidence that a causal connection exists between the employment and the disability?

The first two questions, in essence, question the sufficiency of the evidence to support the award. The third question, whether "an injury by accident" is involved, will be considered and answered for the first time.

### THE EVIDENCE

It is clear from reading both the first and second opinions that although there was no question Mrs. Fuller was suffering from rheumatoid arthritis and her work as a switchboard operator for petitioner *aggravated* her general condition, the evidence did not support the medical causation aspect of the case that it was work related. *See Dunlap v. Industrial Commission,* 90 Ariz. 3, 363 P.2d 600 (1961); A.R.S. § 23–1021.

However, at the July 2nd hearing Dr. Thompson testified:

Q . . . Based upon the history that you received, did Mrs. Fuller exhibit any symptoms of rheumatoid arthritis prior to her employment at Montgomery Ward?

A What date was that?

Q June of 1965.

A No.

Q Doctor, getting to the area that I feel was not inquired into previously, do you have an opinion based on reasonable medical probability as to whether or not Mrs. Fuller's employment with Montgomery Ward caused or precipitated the onset of the disease of rheumatoid arthritis itself?

\* \* \* \* \* \*

[A] . . . The cause of arthritis is unknown and there is no question at all that the employment did not cause her arthritis. You asked about precipitation of an arthritis. Why, in my opinion it definitely did.

Q . . . When you are talking about precipitation, are you talking about precipitation of the disease or the symptoms of the disease?

A Well, they are both the same. With rheumatoid arthritis, with an unknown cause, any stress factor may cause symptoms or produce the arthritis. Medically they are exactly the same. That can be any stress factor, it can be employment, it can be chilling, or any individual stress at that time; cause and precipitation are two different things.

Q Upon what do you base your opinion that Mrs. Fuller's employment precipitated the onset of the rheumatoid arthritis?

A I didn't see her during the time that this occurred, and in reviewing the type of work that she did and the subsequent definite diagnosis of rheumatoid, it would be my opinion that it was a precipitating factor.

Q And what about the type of work that she was doing which would cause you to believe that?

A She was a switchboard operator which involves a lot of the use of the hand, overuse of the joints; possibly a

---

1. This was under the law prior to its amendment in 1971. (Ch. 173, § 10, Laws of 1971)

cooling factor although I am not sure what that amounted to. But definite stress work factor is the best way I could put it.

Q Prior to the onset of the disease, while she was working for Montgomery Ward, was there any evidence of a preexisting condition?

A I only have it from the history and from Dr. Farness, and I didn't get any such information of a preexisting arthritis.

Q So then are we actually talking about her employment aggravating a preexisting condition in this case?

A Well, I think both. You asked me for my opinion about the possible precipitating factor, and I think that was present, and I think if she continued to work there was definitely an aggravation, and I suggested a change of the type of employment.

Q You are currently still treating her?

A That's right.

Q With reference to her condition at the present time, what is it with reference to her ability to engage in any type of employment?

A Well, she is completely and totally disabled from carrying on any type of active employment presently.

\*   \*   \*   \*   \*   \*

Q  .  .  .  The question is: Do you have an opinion based on reasonable medical probability as to whether or not Mrs. Fuller would have been in the disabled condition she is now had it not been for her employment precipitating the onset of this disease?

A I think the answer on that is yes.

MR. BROWNING: May I have that question and answer reread? I was thinking of something else.

THE WITNESS: I got a little confused with the wording.

(The last question and answer were read by the Court Reporter).

Q (By Mr. Rabinovitz) I don't know whether I understand it now myself.

A Maybe I can clarify by saying this: I think that after the disease was precipitated it was responsible for the ensuing events that she has undergone, which is a chronic severe rheumatoid arthritis. That's the way I put it medically.

Q What I was asking, and not very well, was: If her employment had not precipitated the onset of this disease, would she be in the disabled condition she is now? Did you understand that to be my previous question?

A I think I understand it now. I think you are asking me that if she hadn't had the arthritis, would she have been in this state now, is that correct?

Q If her employment had not precipitated the onset of the disease.

A I don't think so, no.

Q Has Mrs. Fuller's condition become stationary?

A Has it become stationary? No, it has deteriorated, I would say.

Q Is she still in need of continuing medical treatment?

A Right.

Q And is that need for medical treatment a permanent need?

A I would anticipate that she is going to be under treatment probably the rest of her life.

Q Is the total disability that you have referred to previously a permanent disability?

A Yes, it is a permanent disability.

Primarily on the basis of this testimony the Commission found:

5. That the onset of the rheumatoid arthritis was precipitated by the applicant's [Mrs. Fuller's] employment. That as the applicant continued to work, her arthritis was aggravated by the activity involved in her work and the low temperature and cold drafts to which she was subject to in her place of employment. That the severity of the applicant's symptoms was thereafter increased and accelerated by the conditions of her employment. That the applicant's present disability results directly from her arthritic condition.

In addition, the Commission found that the "injury" was not stationary.

■ Taking the evidence in the light most favorable to sustain the award, it is our opinion that respondent employee has successfully established medical causation, that is, without the work factor Mrs. Fuller would not have experienced the onset of the rheumatoid arthritis. In our first opinion, 14 Ariz.App. at 23, 480 P.2d 360, we noted that "there is no evidence that her *disability* was caused in whole or in part by her work activities rather than by the natural progression of the disease," and "there is no testimony from which it can be inferred that the work activity actually caused a disability which would have existed separate and apart from the work activities involved." As seen above, the record now has this medical testimony, which was believed by the trier of fact. In the second opinion, 20 Ariz.App. at 590, 514 P.2d at 761, we noted that Dr. Thompson "is unable to state to any degree of medical certainty that this aggravation left her in any worse condition than if the aggravation had never occurred." Dr. Thompson's testimony, in this regard, which was believed by the trier of fact, also cures that deficiency in the evidence.

Petitioner contends that nothing new is added by Dr. Thompson's testimony that the work "precipitated" the rheumatoid arthritis. As already stated, we disagree. The word *precipitate* in the medical sense means to hasten the occurrence or event. It involves a type of medical causation. *See In re Cain*, 64 Idaho 389, 133 P.2d 723 (1943); *Knock v. Industrial Accident Commission of California*, 200 Cal. 456, 253 P. 712 (1927); *Dorland's Illustrated Medical Dictionary* (24th ed. 1965). In the recent case of *Harbor Insurance Company v. Industrial Commission*, 25 Ariz.App. 610, 545 P.2d 458 (1976), we upheld an award for compensation for rheumatoid arthritis where one doctor testified that the "trauma can have a triggering or precipitating effect." We also noted that this medical testimony was analogous to that in "heart attack" cases. In our opinion Dr. Thomp-

son's testimony involves his opinion of medical causation and constitutes sufficient evidence to support the award.

## INJURY

■ A question left open in the first opinion, but raised in each subsequent review is whether the disease rheumatoid arthritis and the circumstances of this case involve an industrial injury by accident. In our first opinion we noted:

Mrs. Fuller does not point to any specific external or internal happening or event which would normally be considered as an "injury by accident", but rather, in effect, takes the position that her continued work activity, after the progress of her disease made her work painful and uncomfortable, constituted an injury by accident within the gradual injury concept enunciated in *Reilly v. Industrial Commission*, 1 Ariz.App. 12, 398 P.2d 920 (1965). Without question under prior Arizona decisions exposure to deleterious conditions associated with one's employment resulting in a disabling injury or disease does constitute an injury by accident, even though there is no *sudden* external event or *sudden* unintended and unexpected internal result. *See Reilly v. Industrial Commission, supra* (repeated continuous exposure to lint, resulting in emphysema); *Dunlap v. Industrial Commission*, 90 Ariz. 3, 363 P.2d 600 (1961) (pneumonia developed as the result of inhaling fumes from a cracked exhaust pipe); *English v. Industrial Commission*, 73 Ariz. 86, 237 P.2d 815 (1951) (inhalation of fumes over a period of time); *In re Mitchell*, 61 Ariz. 436, 150 P.2d 355 (1944) (inhalation of carbon tetrachloride fumes). However, in each of the above cases the exposure which resulted in disability was definitely work-connected and peculiar to the employment conditions involved, whereas in the case at hand the activities constituting the claimed "gradual injury" were not essentially different in kind from the claimant's normal non-employment activities, nor did they cause the arthritic condition here involved. Here, claimant's disease progressed to the

point where she could no longer do her work comfortably or without pain. However she continued her work and thus "aggravated" her condition. While we doubt that the circumstances of this case involve an injury by accident, we need not decide the question because in our opinion there is another failure in Mrs. Fuller's proof which requires that the award be set aside. (14 Ariz.App. at 22, 480 P.2d at 359)

It is true that this Court has some difficulty, in light of the medical testimony given in this case and many others that we have knowledge of, in holding that a disease such as rheumatoid arthritis can ever constitute an industrial injury under the Workmen's Compensation Act. The law in Arizona, however, has no such difficulty. In *Dunlap v. Industrial Commission*, supra, our Supreme Court held that pneumonia constituted an "injury" arising from an "accident" (breathing vapor from a cracked cylinder head of a tractor), where medical testimony established medical causation between the claimant's work, the pneumonia, and the defective tractor. As seen above, Dr. Thompson's testimony sufficiently establishes this same relationship between Mary Fuller's work, the rheumatoid arthritis, and her work at the switchboard. Finally, as noted by this Court in *Harbor Insurance Company v. Industrial Commission*, supra, the rheumatoid arthritis condition is analogous to the industrial "heart attack" cases in that we must rely on medical opinion to establish medical causation and "injury" in industrial disease "accident" cases. *See also Paulley v. Industrial Commission*, 91 Ariz. 266, 371 P.2d 888 (1962).

The medical testimony of Dr. Thompson establishes a sufficient "injury" under the Workmen's Compensation Act.

## LAW OF THE CASE

Although not expressly or directly stated, the petitioner raises a "law of the case" argument. Petitioner contends in its brief that "In the first case, the Court set forth the facts, adopted by reference in the second case here—and we submit that they are the facts that control here." In our opinion the "facts" in Arizona Workmen's Compensation cases can seldom be subject to "law of the case" doctrine.

In Arizona, when an award is set aside, the legal effect is as though the vacated award had never been entered and the hearing on remand is *de novo*. See *King v. Alabam's Freight Co.*, 40 Ariz. 363, 12 P.2d 294 (1932); *Vidal v. Industrial Commission*, 8 Ariz.App. 244, 445 P.2d 446 (1968). This is not to say that the doctrine of law of the case can never be applied to "legal" issues in Workmen's Compensation cases. In *Collins v. Industrial Commission*, 104 Ariz. 485, 455 P.2d 963 (1969), our Supreme Court applied the doctrine, where, in the first case, it ruled that the "claim" giving the Commission jurisdiction was not timely filed, and in the second case the timely filing of the claim was raised again. Since this holding went to the issue of the legal jurisdiction of the Commission to hear the claim, it is not surprising that the Supreme Court applied the law of the case doctrine to that situation.

The doctrine must be given very limited application to factual determinations in Workmen's Compensation cases, in order not to do violence to the *de novo* hearing requirement, where an award is vacated by an appellate court. If, on a given state of facts, this Court holds that medical causation, timeliness of filing, course of employment or any other necessary factor has not been proved, that constitutes the law of the case on the given set of facts. If on remand, no additional testimony is taken and reliance is had on past testimony or a readmission of the same testimony, then our prior disposition governs as the law of the case. Since we cannot remand for limited issues, it is true that the parties are at liberty to re-litigate *all* issues, but here again, the law of the case rules as to any issue upon which the same evidence, with no additional testimony, is introduced.

In the instant case, both of the prior awards were set aside on the basis of insufficient evidence to support the award, and

each went back to the Commission for a new full hearing on the original claim. The burden of proving her original claim has remained with Mrs. Fuller each time. At the July 2, 1974 hearing, the lay testimony was stipulated, the file was available, and the only testimony presented was that of Dr. Thompson. From this evidence, the referee made his findings, which were approved by the Commission. In all such cases on review, the sufficiency of the evidence to support the findings is the issue, as it is again in this review. The doctrine of law of the case has no application in this factual determination where new evidence is presented.

Petitioner's argument going to "changed testimony" of witnesses is a similar argument. However, this is really an issue of credibility and impeachment of witnesses which was within the province of the referee, as finder of fact, to determine.

 Finally, petitioner complains that respondent had changed her legal theory for recovery. While petitioner casts this in terms of a "legal" change actually it was a "factual" change. The first and second awards were based on the factual theory that the rheumatoid arthritis was a preexisting condition, aggravated by the respondent's working conditions, while the third award incorporates the new factual theory that the onset of the applicant's rheumatoid arthritis was precipitated by Mrs. Fuller's work as a switchboard operator and she had not suffered from rheumatoid arthritis prior to working for the petitioner. Although this contention is true, we do not consider it of great merit. Both theories are essentially the product of medical opinion based on medical facts. Dr. Thompson, as we have seen, testified to the second theory at the last hearing, which he factually supported, and he was subject to vigorous cross-examination by petitioner. He explained the basis for his opinion in detail. Our review of the record does not support the argument that the referee was wrong; to the contrary, we find substantial evidence in Dr. Thompson's testimony to sustain the award. Although in civil cases where the law of the case doctrine is applicable, this result would be different, Workmen's Compensation cases do not bind an applicant for relief to a particular medical theory or factual basis advanced for a prior award that has been vacated. Where a new medical theory or facts are advanced at the new hearing, the referee, and now the hearing officer, must assess the credibility of the medical witness advancing the new theory. As Dr. Thompson stated on cross-examination, no one asked him at the prior hearings whether Mrs. Fuller's work had precipitated the onset of her rheumatoid arthritis.

The award is affirmed.

JACOBSON and OGG, JJ., concur.