496 P.2d 611

Opal McNEELY, In re Billy W. McNeely, Deceased, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Reynolds Metals Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 651.

Court of Appeals of Arizona, Division 1, Department B.

May 2, 1972.

Rehearing Denied June 9, 1972.

Review Granted July 13, 1972.

Chris T. Johnson, Phoenix, for petitioner.

Porter, Stahnke & Phillips by Bernald C. Porter, Phoenix, for respondent employer.

William C. Wahl, Jr., Chief Counsel The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

JACOBSON, Judge.

Does an industrially compensable death occur where two heart attacks are present, the first of which is not industrially related, but during the period between the two, the deceased works, thus "aggravating" his heart condition? This is the question presented in this appeal by certiorari from an award of The Industrial Commission denying compensation to the widow.

For twenty years prior to his death, the deceased Billy W. McNeely, had been employed as a maintenance mechanic for Reynolds Metals Company. Unbeknownst to him, he suffered from coronary artery disease and had a congenitally small right coronary artery. In December, 1968, the deceased noted chest pains on heavy lifting or exertion and was advised by the company doctor that his pains were anginal in nature and he prescribed nitroglycerin. The deceased continued to work with no loss of time.

On Wednesday, January 15, 1969, the deceased suffered a myocardial infarction, of which he was apparently unaware. He continued to work at his regular job, eight hours a day, on Wednesday, Thursday and Friday. On Saturday evening, January 18, 1969, while driving from the drugstore in an automobile, he suffered a second myocardial infarction which resulted in his death 24 hours later.

The hearing officer's findings of fact in this matter adequately bracket the legal question involved:

"6. The infarction which occurred on or about Wednesday, January 15, 1969, was the result of the natural progress of applicant's preexisting coronary artery disease combined with a congenitively small right coronary artery. Although applicant's work was strenuous, applicant had been performing his regular work up to the time of his initial infarction, and the work was neither a factor in the genesis of the coronary artery disease nor in precipitating the infarction.

"7. The medical evidence indicates that by continuing to work on Thursday and Friday, January 16 and 17, 1969, the applicant (decedent) aggravated or worsened his heart damage and accelerated his death."

In addition the hearing officer found as follows:

"11. As indicated by autopsy, Billy W. McNeely suffered from a severe preexisting heart condition. His right

coronary artery was congenitally small, placing a heavier load on the left, and the left coronary artery was ninety percent (90%) occluded due to atherosclerosis. Statistically, such a condition usually results in death in the forties.

"12. Considering the severity of the pre-existing condition, while the medical evidence indicates that continuing to work constituted an aggravation of the non-industrial infarction, there is no evidence that it was a *material* aggravation."

The sequence of presenting medical testimony in this case was unfortunate. At the first hearing in this matter, the company doctor who had initially diagnosed the deceased's condition and recommended nitroglycerin testified that:

"My opinion is that the work didn't cause his coronary. It didn't happen that way . . . if it had happened while he was working, even though it was his usual work or whether it wasn't his usual work, he would have a crushing substernal chest pain which would have persisted without remittance."

At this same hearing, the deceased's attending physician also testified. This testimony was generally that after his examination of the deceased following his referral by the company doctor in early January, 1969, he was unable to come to any conclusive opinion that in fact the deceased was suffering from a heart-related problem and released him back for work. He did, however, in answer to a hypothetical question, which assumed a pre-infarction condition existed, testify that in his opinion, the deceased's continued working during the pre-infarction period would aggravate and contribute to his ultimate death. This opinion was based on the treatment given pre-infarction patients generally, that is, the patient is immediately placed in a hospital and immobilized completely. If this treatment is valid, the doctor continued, work activity during the pre-infarction period would aggravate his heart condition. In our opinion, giving the attending doctor's testimony the greatest possible latitude, his opinion was that *any* activity whether work related or not would aggravate a pre-infarction heart condition.

It should be noted that at the time of this hearing, both doctors' testimony was based upon hypothetical questions which assumed that the deceased had suffered only *one* myocardial infarction and that this infarction occurred on the evening of Saturday, January 18, 1969, from which he died 24 hours later.

At the close of the first hearing, the Fund requested and was granted a continued hearing based upon the inability of a subpoenaed doctor to appear at that hearing and testify.

At the second hearing in this matter, the subpoenaed doctor testified, again on the assumption that only *one* infarction had occurred, that:

"My opinion is that this patient sustained a myocardial infarction and death. His previous condition of employment in all probability did not contribute to that infarction."

At the second hearing, and for the first time, the petitioner called the pathologist who had performed the autopsy on the deceased. This doctor testified that from his examination of the heart tissues involved it was his opinion that the deceased had not suffered an infarction on the evening of January 18, 1969, but that his infarction had occurred some three or four days prior thereto, probably on January 15, 1969. Based upon this finding, the pathologist was of the opinion that the deceased's continued working following this massive infarction would aggravate his condition and hasten his death.

The doctor called by the Fund at this second hearing conceded that if in fact the deceased had suffered a massive myocardial infarction on January 15, 1969 and continued to work for two days thereafter, his work would aggravate his condition and hasten his death. Again, a fair reading of both these doctors' testimony leads us to the conclusion that they were of the opinion that *any* activity whether work

related or not, following a myocardial infarction would aggravate the infarction and hasten death.

The Fund upon hearing the pathologist's opinion as to the date of the infarction claimed surprise and requested a third hearing for the purpose, if possible, of refuting this testimony.

The hearing officer, being of the opinion that the claim of surprise was well taken, granted an additional hearing.

So the third hearing in this matter was held, at which another pathologist testified that in his opinion from the examination of the heart tissues involved, the deceased's myocardial infarction occurred approximately 24 hours prior to his death or on January 18, 1969. This third hearing devolved itself primarily into a determination as to which pathologist was correct and did not touch on the issue of whether deceased's work activities were causally related to his death.

Following the third hearing, the hearing officer on his own initiative, had the questioned tissues examined by a third pathologist who submitted a report which stated in essence that both pathologists were correct, in that the deceased suffered a myocardial infarction on January 15, 1969, and a second infarction on January 18, 1969. The hearing officer granted both sides an opportunity to cross-examine this third pathologist which was declined. The hearing officer adopted as his findings of fact the opinion of the third pathologist. From our examination of the record this finding by the hearing officer is obviously supportable.

In summary then, the evidence before the hearing officer supported the conclusion that the deceased suffered a myocardial infarction on Jauary 15, 1969, which

was in no way related to his work activity and that any activity whether work related or not [1] following his infarction would aggravate this condition and hasten his death. The court is thus faced with the question of whether the activity engaged in, being in fact the normal work activities of the deceased, places the deceased under the umbrella of the workmen's compensation protection.

We have had occasion in the past to call the legislature's attention to the heart attack problem in the workmen's compensation field. *See,* Stotts v. Industrial Commission, 15 Ariz.App. 290, 488 P.2d 495 (1971). This case exemplifies the need for legislative action directing the courts as to whether the heart-related problem is in fact a compensable disease, and if so, how that condition is to be compensated. However, without such legislative direction, we will attempt to propound at least some guidelines.

The court is aware of the numerous decisions of both this court and the Supreme Court which state:

"[I]n the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an *injury* operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960). (Emphasis added.)

The court is also aware of the doctrine that:

"Where an *injury* occurring in the scope of employment has aggravated a preexisting condition the workman is entitled to compensation for loss of earning capacity." Tatman v. Provincial

---

1. As indicated, the hearing officer found that the deceased's work following the first infarction was not a "material aggravation" of his preexisting condition. We take this to mean that any activity other than complete immobilization, would have aggravated the infarction condition. *See,* however, the rule in New Jersey which requires in heart attack cases "that the ordinary work effort or strain in reasonable probability contributed in some *material* degree to the precipitation, aggravation or acceleration of the existing heart disease and the death therefrom." Dwyer v. Ford Motor Co., 36 N.J. 487, 178 A.2d 161 (1962). (Emphasis added.)

Homes, 94 Ariz. 165, 382 P.2d 573 (1963). (Emphasis added.)

When dealing with non-heart attack cases, it is normally relatively simple to point to a particular "injury" which has a work-related origin. However, in heart attack cases, the "injury", being the infarction itself, is multiple originative in character, and the causal connection between work and infarction is therefore difficult to ascertain. It therefore becomes necessary to review the underlying precepts of the Workmen's Compensation Act to arrive at a workable definition of a work-caused injury in exertion heart attack cases.

The basic purpose of the Workmen's Compensation Act is to relieve society of the burden of caring for workmen injured in industrially-related activities and to place this burden upon industry itself. English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815 (1951). However, the act does not provide a general health and accident coverage and therefore there must be a causal connection between the employment and the ensuing injury or death. Muchmore v. Industrial Commission, 81 Ariz. 345, 306 P.2d 272 (1957). It is obvious then, that what we are talking about is that Workmen's Compensation is to provide protection to those suffering injury or death who are exposed, because of their work activities, to situations which they would not generally encounter in their normal daily living routine.

This does not mean that the workman who is injured in the course and scope of his employment while driving an automobile is denied coverage because he also drives an automobile in his non-working hours. This is for the reason that the law recognizes that he would not be in the particular position he was in when the accident occurred *except for* his employment which placed him there. The "course of his employment" placed him in a position which exposed him to injury. *See,* City of Phoenix v. Industrial Commission, 104 Ariz. 120, 449 P.2d 291 (1969).

It does mean however, that workmen's compensation is not available to a workman for those failings of the human machine to which all of us are exposed by the daily wear and tear of living. Sacks v. Industrial Commission, 13 Ariz.App. 83, 474 P.2d 442 (1970); Lawson v. Industrial Commission, 12 Ariz.App. 546, 473 P.2d 471 (1970).

With these concepts in mind we turn to the question posed by this case:

"What is the industrially work connected injury in exertion heart attack cases?" This question must be answered keeping in mind that normally heart attacks are related to an underlying and preexisting atherosclerotic or similar condition.

Our review of industrial heart attack cases leads us to the conclusion that in Arizona, while the work activity of the claimant need not be "unusual" to meet the requirement of an accident, there still must exist the causal connection between the work and the ensuing infarction. Pima Mining Co. v. Industrial Commission, 11 Ariz.App. 480, 466 P.2d 31 (1970); Linn v. Industrial Commission, 10 Ariz.App. 571, 460 P.2d 677 (1969). The courts have, however, deferred to the medical profession to supply this causal connection, without drawing any guidelines for determining what legally is a causal connection. *See,* Stotts v. Industrial Commission, *supra.* As previously indicated, it is time such guidelines be drawn.

In our opinion, to give effect to the previously defined underlying purposes of the workmen's compensation laws, we are drawn to the conclusion that in order for an industrial injury to occur in a heart attack case where the medical testimony indicates that exertion is the cause of the infarction, the work itself must cause an exertion on the heart that is greater than the exertion placed on that heart by normal daily living.

We are impressed in this regard by the reasoning of the New York cases on this subject which hold:

"The Masse case [Masse v. James H. Robinson Company, 301 N.Y. 34, 92 N.E. 2d 56 (1950)] decided that the precipitating cause need not be something more strenuous than the normal performance of the work demanded, *provided that the ordinary cause of the work was sufficiently strenuous to require more than normal exertion.* But where, as here, a heart has deteriorated so that any exertion becomes an overexertion, where the mere circumstance that the employee was engaged in some kind of physical labor is what impels the doctor to testify that his work causes his death, we have reached a point, if this award were to be upheld, where all that is necessary to sustain an award is that the employee shall have died of heart disease." Burris v. Lewis, 2 N.Y.2d 323, 160 N.Y.S.2d 853, at 855, 141 N.E.2d 424 at 426 (1957). (Emphasis added.)

This test has been said to require a determination "as to whether the regular job activity itself entails *greater exertion than the ordinary wear and tear of life.*" Lerner v. Terrycab Company, 20 A.D.2d 615, 245 N.Y.S.2d 565 (1963). (Emphasis added.)

■ Applying this test to the facts of this case it is apparent that any activity by the deceased following his massive infarction on January 15, 1969 would aggravate his condition. It is apparent that if he had washed his car, mowed the lawn or walked around the block, his post infarction condition would have been "aggravated". There was no showing, however, that his activity at work placed a greater strain on his already damaged heart than any other normal non-work activity. Thus, from a medical standpoint, his work "aggravated" his post-infarction condition, but such an "aggravation" from a legal standpoint was not sufficient to place him within the ambit of the protection of this state's Workmen's Compensation Act.

For the foregoing reasons, the award of the Industrial Commission is affirmed.

HAIRE, C. J., and EUBANK, J., concur.