611 P.2d 938

DIVISION OF VOCATIONAL REHABIL-
ITATION, Petitioner-Employer,

State Compensation Fund,
Petitioner-Carrier,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Charles R. Mugg, Respondent-Employee.

No. 1 CA–IC 2197.

Court of Appeals of Arizona,
Division 1,
Department C.

March 20, 1980.
Rehearing Denied May 8, 1980.
Review Denied June 3, 1980.

Robert K. Park, Chief Counsel, State
Compensation Fund, by Don F. Schaar,
Phoenix, for petitioner-employer and peti-
tioner-carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Gorey & Delaney by Edgar M. Delaney, Phoenix, for respondent-employee.

## OPINION

OGG, Chief Judge, Division 1.

The two issues raised in this appeal are:

1. Was the respondent employee, Charles R. Mugg, entitled to benefits under the Workmen's Compensation Act as a covered employee of the Department of Economic Security under the provisions of A.R.S. § 23–901.-4(f)?

2. Was this a valid industrial injury where the activity engaged in at the time of the injury was common to the public in general and was not peculiar to the employment activities?

We affirm the award.

The facts are undisputed. Respondent sustained an industrial injury to his back while working in Oklahoma. He underwent surgery for ruptured discs. Permanent disability resulted, for which he received compensation.

After relocating in Arizona, he consulted a vocational rehabilitation counselor of the Department of Economic Security's Division of Vocational Rehabilitation (hereinafter DES and DVR, respectively). This counseling led him to select welding as his vocational goal. Training options included on-the-job training with a private employer, vocational training at a local community college, or vocational training at a private technical school. Because on-the-job opportunities were unavailable and the private school offered the best training, respondent chose to attend a private school and enrolled at the ABC School of Welding.

Respondent was unable to obtain private disability insurance because of his injury. Prior to undertaking training, he questioned the counselor about the consequences of re-injury during training. He testified that the counselor assured him that he was protected by workmen's compensation coverage. The counselor testified that he could not recall making any specific representation, but that under the administrative guidelines applicable then, he thought respondent was eligible for coverage and sought to qualify him.

The Department paid respondent's relocation, subsistence and tuition expenses. The training consisted of approximately two hours of classroom instruction and six hours of shop work per day. Upon successful completion, the trainee received a school diploma and/or a Certificate of Completion. This technical instruction was considered the equivalent of two years of on-the-job training.

While at work on an assigned project in the school shop, respondent bent from the waist to pick up a scrap of metal from the floor. Although the motion required only ordinary bending and the weight of the metal was negligible, he severely strained his back. The injury compelled him to leave school and obtain medical treatment.

## THE COVERAGE UNDER A.R.S. § 23–901.4(f) ISSUE

This issue, whether a vocational trainee attending a private technical school under the DVR's rehabilitation program is a DES employee, is one of first impression. Its resolution turns on the meaning of A.R.S. § 23–901.4(f), which provides as follows:

Any person placed in on-the-job evaluation or on-the-job training under the department of economic security's vocational rehabilitation program shall be deemed to be an employee of such department for the purpose of coverage under the state workmen's compensation laws only. . . Any person receiving vocational rehabilitation services under the department of economic security's *vocational rehabilitation program whose major evaluation or training activity is academic,* whether as an enrolled attending student or by correspondence, or who is confined to a hospital or penal institution, shall not be deemed to be an employee of the department for any purpose. (emphasis added)

The first class that the statute designates includes persons placed in on-the-job evaluation or training. Members of this class are explicitly deemed DES employees. Membership in this class requires placement in on-the-job evaluation or training.

We disagree with petitioners' contention that failure to qualify for membership in this class necessarily determines that a trainee is not a DES employee. Statutes must be interpreted as a whole. *See Long v. Dick*, 87 Ariz. 25, 347 P.2d 581 (1959). A.R.S. § 23–901.4(f) designates a second class. The two classes, therefore, must be interpreted together.

The second class includes, *inter alia*, persons receiving vocational rehabilitation services whose *major* evaluation or training activity is *academic*. Members of this class are explicitly not deemed DES employees.

If petitioners were correct that only members of the first class were DES employees, the second class would be either unnecessary or limited to on-the-job placements whose major training activity is academic. Both alternatives are absurd; the first renders the second class redundant, the second restricts its membership to an inconsequential group.

The statutory language does not compel this interpretation. The class of persons receiving vocational rehabilitation services whose major training activity is academic presupposes a more inclusive category of all persons receiving vocational rehabilitation services, both academic and non-academic. By explicitly excluding as DES employees only academic trainees, the statute implicitly includes as DES employees non-academic trainees.

The statutory history supports this interpretation. Two versions of A.R.S. § 23–901.4(f) preceded the present one. The first provided as follows:

Any person who performs service for an employer as a trainee for the purpose of vocational rehabilitation under the terms of any recognized public or private program is deemed to be an employee. Laws 1970, Ch. 187, § 1. The second provided as follows:

Any person being evaluated or trained in vocational activities or who performs service for an employer as a trainee under the auspices of vocational rehabilitation division is deemed to be an employee of the vocational rehabilitation division. Laws 1971, Ch. 173, § 6.

The evolution from the first to the second version indicates a legislative intent to shift the burden of providing workmen's compensation coverage for on-the-job trainees from the private employer to the DES and to expand the class of covered trainees from those performing service for employers to all vocational trainees. The evolution from the second to the present version indicates a legislative intent to keep the coverage burden for on-the-job trainees on the DES (the first class), and to exclude academic trainees from the class of covered trainees (the second class). If the legislature had intended to limit DES employees to on-the-job trainees, it would have simply eliminated the language of the second version that expanded coverage to all trainees, rather than merely excluding the limited class of academic trainees.

Sound policy underlies these distinctions. Unless DES assumes the coverage burden, private employers are unlikely to provide on-the-job training for disabled persons. Similarly, because the trainee probably cannot obtain private disability insurance when training involves hazards similar to industrial employment, i. e., when training is non-academic, the disabled person is unlikely to assume the risk of reinjury unless he is protected. The first classification solves the employer's problem; the second solves the trainee's.

We conclude that under A.R.S. § 23–901.4(f), any person receiving vocational rehabilitation services whose major evaluation or training activity is not academic in nature shall be deemed a DES employee.

The statute defines neither the term "on-the-job" nor the term "academic." "On-the-job", as commonly used, denotes a training position with a private employer.

588

It is conceded that respondent's placement at a private technical school did not constitute on-the-job training. He, therefore, was not a member of the first class of DES employees.

There are two possible interpretations for the term "academic". Under the broad interpretation, the term means training occurring at a school. The more narrow interpretation of "academic" means instruction occurring in a classroom, as opposed to technical training occurring in a workshop or in the field.

The same arguments applicable to interpretation of the statute as a whole are applicable to the interpretation of the term "academic". To interpret it broadly would, in effect, limit DES employee status to on-the-job trainees.

■ There is sufficient evidence in the record to support the hearing officer's determination that the major training activity at the ABC School of Welding was not academic in nature. As of the date of the accident, the training had consisted of two hours of classroom instruction offered each week with six hours each day devoted to practical welding experience in the workshop. Given the statutory language, its history, and its underlying policy, it is our opinion that the respondent was a DES employee under the terms of A.R.S. § 23–901.4(f).

### THE COMPENSABILITY OF THE ACCIDENT ISSUE

The petitioners contend that because an ordinary bending motion caused the injury, no compensable accident occurred. Two distinct problems are involved. We must determine whether the injurious incident constituted an industrial accident and second, if it did, whether such accident arose out of the employment.

■ The hearing officer correctly decided that the incident was an accident. It is unnecessary for the incident (bending action) to be unexpected or extraordinary. It is sufficient that the consequences of the incident (the acute lumbar strain) are un-

foreseen or uncommon. An injury is caused by an accident within the Workmen's Compensation Act when either the external cause or the resulting injury itself is unexpected or accidental. *See Paulley v. Industrial Commission*, 91 Ariz. 266, 371 P.2d 888 (1962).

■ The second problem, which the hearing officer did not specifically address, focuses on the required relationship between the risk giving rise to the injury and the employment. It is unnecessary for the employment to create a special risk of injury. *See Pauley v. Industrial Commission*, 109 Ariz. 298, 508 P.2d 1160 (1973). The employer takes the employee as he finds him. *See Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission*, 17 Ariz.App. 516, 498 P.2d 590 (1972). It is sufficient that this bending action while engaged in welding activity increased the risk of injury to respondent. The accident, therefore, arose out of the employment.

In summary, because respondent was a DES employee and a compensable accident occurred, the hearing officer properly awarded benefits under the Arizona Workmen's Compensation Act.

Award affirmed.

CONTRERAS, P. J., concurs.

JACOBSON, Judge, dissenting:

Both the majority and myself start from a point of difficulty—attempting to interpret a statute which is unclear, or more simply put, is subject to more than one reasonable interpretation.

The operative words of A.R.S. § 23–901.-4(f), which determines the outcome of this litigation, are:

"Any person receiving vocational rehabilitation services under the department of economic security's vocational rehabilitation program whose *major* evaluation or training activity is *academic* . . . shall not be deemed to be an employee of the department for any purpose." (Emphasis added.)

The question squarely before the court is whether a private vocational school which teaches welding under a curriculum of two hours of classroom work and six hours of shoproom work during a day, is a "program whose major . . . training activity is academic." [1] Based upon a review of the legislative history and socio-economic considerations, the majority concludes it is not. To me, at best, the legislative history is confusing, and the socio-economic policy considerations are either unproven or ill-defined.

As to the legislative history, the first version of A.R.S. § 23–901.4(f) appeared in 1964 (1970 Ariz.Sess.Laws, ch. 187 § 1, originally enacted 1964 Ariz.Sess.Laws, ch. 70 § 1). This version is set out in the majority opinion and need not be repeated here. What it basically provided was that vocational rehabilitation of on-the-job trainees would be considered, for workmen's compensation purposes, to be employees of the person to whom they were rendering services.

From purely a philosophical standpoint, this statute appears consistent with the underlying rationale of workmen's compensation laws—providing benefits in the traditional employer/employee setting resulting in commercial activity. However, on the face of the statute it appears self-defeating from the standpoint of the needs of occupational rehabilitation—providing a ready market for on-the-job trainees. While we have no history of how successful placing on-the-job trainees was under this statute, it would be reasonable to assume that many employers would be hesitant to increase their workmen's compensation loss experience by employing previously injured workmen.

In any event, the statute was changed in 1971 (1971 Ariz.Sess.Laws, ch. 173 § 6), by providing that *all* vocational trainees, whether they were engaged in traditional workmen pursuits or not, were deemed for the purposes of workmen's compensation benefits to be employees of the vocational rehabilitation division. This statute, it appears to me, cured the defect of the prior statute by opening up the on-job training placements, but by its terms included individuals who would not traditionally be covered by workmen's compensation laws—individuals engaged in non-work-related activities. For example, I would assume that under this version of the statute, an individual who was in a doctor's office being evaluated by vocational rehabilitation for the fitting of a prosthesis and was injured during that evaluation, would be entitled to workmen's compensation benefits, although he was not engaged in any employment activities. Thus, while the 1964 statute can be said to be too narrow, the 1971 version appears to be too broad.

This brings us to the present statute. I agree with the majority that this statute now creates, for workmen's compensation purposes, three separate classes of individuals receiving vocational rehabilitation services: (1) on-the-job trainees who are covered by workmen's compensation; (2) non-academic trainees who are likewise covered by workmen's compensation; and (3) academic trainees who are not covered. But, from the legislative history, I am at a loss to understand why these classifications exist, nor is this legislative history helpful in defining the key word to this legislation, "academic." This lack of understanding is directly related to my ignorance of what services vocational rehabilitation offers so that I can intelligently evaluate the legislative intent in applying the competing policies of encouraging rehabilitation efforts while still maintaining the concepts of work-related activity. Unfortunately, the record in this case does not supply that information, nor am I able, primarily because of the extensive use of "bureaucratese" [2] in the department's regulations, to ascertain this information. *See generally* Rules and Regulations of the Department

---

1. The statute itself does not define "academic."

2. To an outsider, the rules and regulations of Vocational Rehabilitation appear to be written

for the guidance and direction of persons intimately associated with the department, rather than to clearly and intelligently inform the public of what these rules and regulations require.

of Economic Security, Rehabilitation Services, A.C.R.R. R6–4–101 et seq.

However, I do glean from the regulations that there is a wide variety of "evaluation and training" activities available through vocational rehabilitation. Since "evaluation" is not involved here, this subject need not be explored; however, from the regulations, I am unable to determine how "evaluation" can ever be "academic."

As to "training" activities, there appears to be offered, "private business and vocational technical schools," "tutors," on the job training, rehabilitation, "work adjustment services," "sheltered work shops," "pre-vocational adjustment," and "personal and social adjustment." R6–4–302(A)(3) and (B)(4).

Moreover, in order to qualify as "providers" of educational services as private, business or technical schools, the institutions must be licensed in accordance with A.R.S. § 15–931. R6–4–302(A)(3)(a). It is clear under A.R.S. § 15–931 that in order to be licensed, the school must have a printed curriculum, adequate facilities, qualified instructors, sound educational management, and a testing system for students. Further, course offerings are to be evaluated before licensing. *See* Rules and Regulations of the Board of Private Technical and Business Schools, A.C.R.R. R7–3–12 et seq. In addition, the school must offer a course "comprehensive enough, and of sufficient length, to enable a graduate to demonstrate a level of knowledge and skill to be employable." R7–3–40. In short, the licensed vocational school, in fact, must be an institution providing an educational objective.

With this background in mind, some definitions are in order. Webster's Third New International Dictionary (1969) gives one definition of "academic" as "of, belonging to, or associated with an academy or school." In turn, that same source defines "academy" as "a high school or college in which a special act, technical skills or business courses are taught often to the exclusion of a liberal curriculum in languages and sciences."

I would agree that "academic" can be viewed, as the majority does, to mean only theoretical "book learnin'." However, given the context of the services offered by vocational rehabilitation at vocational schools, and the regulations placed on these schools to assure an adequate education in the skills taught, the dictionary definitions quoted above seem to me more apropos. I would therefore hold that the term "academic" as used in A.R.S. § 23–901.4(f) refers to a course of regulated study which results in the student attaining "a level of knowledge and skill to be employable." The fact that the student acquires this level through more time spent in practical application of his skills than in studying the theories underlying those skills should not be controlling.

Since it is uncontradicted that the claimant was enrolled at a vocational school offering solely a regulated course of study to reach a level of employability, I would necessarily conclude under A.R.S. § 23–901.4(f), that he was engaged in a program "whose major training activity was academic." I would further conclude that he was not an employee of the department and hence not covered under the provisions of the Workmen's Compensation Act.

I would set aside the award.