729 P.2d 921

**MANDEX, INC., Petitioner Employer,**

**INA Underwriters Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Sylvia Taynor, Respondent Employee.**

**No. 1 CA–IC 3489.**

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 9, 1986.

Moore & Long by James B. Long, Phoenix, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Tretschok, McNamara & Clymer, P.C. by Brian I. Clymer, Tucson, for respondent Employee.

## OPINION

CONTRERAS, Presiding Judge.

In this review of an Industrial Commission award for a compensable claim, we must determine whether increased symptoms of a pre-existing physical condition which are found to be related to work activity and result in increased medical treatment and disability constitute a compensable injury under Arizona's Workers' Compensation law. We conclude that the exacerbation of the pre-existing physical condition is compensable and therefore affirm the award.

In approximately 1970, the respondent employee (claimant), while performing secretarial work involving considerable typing, developed left shoulder pain. She sought treatment from David E. Glow, M.D., who eventually diagnosed her condition as myofascial syndrome or non-articular rheumatism of the shoulder girdle. From the time of that diagnosis, Dr. Glow has periodically treated the claimant for that condition. The claimant eventually left her secretarial job because the myofascial syndrome disabled her from typing.

On September 14, 1983, the claimant was employed by the petitioner employer (Mandex) as its office manager. Prior to accepting employment, the claimant informed her supervisor that she was disabled from typing, and he told her that she would not be expected to do any sustained typing. Despite this assurance, the claimant was required to type as part of her job at Mandex due to a shortage of typists and having to meet deadlines. This typing exacerbated the symptoms of the myofascial syndrome and the claimant returned to Dr. Glow for medical treatment. The symptoms were further aggravated when increases in work load necessitated more typing. The claimant's pain increased to the point where not only typing caused pain but the day-to-day activities of her job caused pain as well. In

addition to shoulder pain, the claimant suffered continual headaches, and neck pain. On September 14, 1984, the claimant, on Dr. Glow's advice, terminated her employment with Mandex. The claimant filed a workers' compensation claim, alleging she had sustained an industrial injury. The claim was denied by the petitioner insurance carrier and hearings were held.

Dr. Glow testified that the claimant's typing at Mandex increased the pain symptoms of her underlying condition and that the exacerbated symptoms required additional medical treatment. Dr. Glow noted that after the claimant terminated her employment with Mandex, her symptoms decreased and she had needed correspondingly less medical treatment.

The administrative law judge found that the claimant's work-related typing activity of 1983 and 1984 contributed to her pre-existing myofascial syndrome and therefore concluded that claimant had established by a preponderance of the evidence that she had sustained an industrial injury arising out of and occurring in the course and scope of her employment. After affirmance on administrative review, this special action followed.

Petitioners present two issues for review by this court. First, do increased symptoms of a pre-existing condition constitute an injury by accident arising out of and in the course of employment? Second, is an alleged injury purposely self-inflicted when a claimant knowingly performs the injurious activity?

■ The statutory elements of compensability are an injury by accident arising out of and in the course of employment. *See* A.R.S. § 23–1021(A). This standard applies despite a pre-existing condition; the employer takes the employee as he or she is. *E.g., Division of Vocational Rehabilitation v. Industrial Commission,* 125 Ariz. 585, 611 P.2d 938 (App.1980). A claim is compensable if work activity combines with a pre-existing condition to cause

a further injurious result. *Professional Furniture Service v. Industrial Commission,* 133 Ariz. 206, 650 P.2d 508 (App. 1982).

■ The petitioners first assert that the claimant was not injured because, although typing increased the pain associated with her pre-existing myofascial syndrome, it did not cause the condition. The claimant responds that increased symptoms to her pre-existing condition due to her work activity which required medical treatment constitute a compensable injury. We must determine whether an exacerbation of symptoms of a pre-existing physical condition is a compensable injury.

We find guidance in a recent opinion of this court in which the dispositive question was whether an exacerbation of symptoms of a pre-existing industrially-related impairment constituted a "new injury." *See Industrial Indemnity Co. v. Industrial Commission,* 152 Ariz. 195, 731 P.2d 90 (Ariz.App.1986). In that case, the claimant was a carpet layer who suffered an industrial back injury. The back condition remained symptomatic and restricted the claimant to light work as a supervisor. The employer laid off the claimant's helpers thereby forcing the claimant to do heavier work, including actual carpet installation. The claimant was initially able to control his pain with medication and exercise. Some time later the claimant move a heavy piece of furniture in the process of installing some carpet and was subsequently hospitalized, competely disabled.

The court concluded that the heavier work activity merely heightened the symptoms of the previous back injury but that such an exacerbation was a new injury for purposes of the successive injury doctrine. The hospitalization and additional medical treatment would not have been necessary but for the work activity. *Id.* at pp. 199–200, 731 P.2d 94–95. The heavier work activity also caused increased disability since the claimant, who had been restricted to

light work, became totally disabled. This increased disability was also a compensable consequence of the heavier work activity. *Id.* at p. 200, 731 P.2d at p. 95.

In the present case, the claimant had a pre-existing physical condition for which she had been receiving treatment for a number of years prior to her employment with Mandex. It is undisputed that claimant's condition was symptomatic and that Dr. Glow had treated the claimant from time to time for a number of years. The unexpected frequency with which the claimant had to type combined with her pre-existing myofascial syndrome to increase her pain and symptoms and require additional medical treatment. As in *Industrial Indemnity*, the unexpected workplace requirements combined with a pre-existing physical condition to cause increased disability.

■ The chief distinction between *Industrial Indemnity* and the instant case is that in *Industrial Indemnity* the pre-existing condition was industrial and arguably, here it was not. This is a distinction that does not make a substantive difference. The same analysis applies to a pre-existing nonindustrial condition. *See Industrial Indemnity, supra,* at 199, 731 P.2d at 94. We conclude that there is a compensable claim for work-related exacerbation of symptoms that themselves require medical treatment. *Cf. Tarpy v. Industrial Commission,* 138 Ariz. 395, 675 P.2d 282 (App.1983) (reopening for increased pain that requires medical treatment, despite no increase of disability). Because of the underlying condition, claimant was disabled from typing but was able to perform the functions of an office manager. The exacerbation of symptoms increased her disability to the point that she was not even able to perform the day-to-day functions of an office manager and was forced to terminate her employment. This increased disability is also a compensable consequence of her injury. *Industrial Indemnity, supra* 152 Ariz. at 200, 731 P.2d at 95; *cf. Montgomery Ward Co. v.*

*Industrial Commission,* 14 Ariz.App. 21, 480 P.2d 358 (1971) (to establish compensable claim, employee must prove that the disability was greater than it would have been without the work contribution).

Petitioner also argues that *New Pueblo Constructors v. Industrial Commission,* 115 Ariz. 236, 564 P.2d 925 (App.1977) is squarely on point in this case. We disagree. In *New Pueblo,* the claimant suffered a herniated disc. It was unclear whether the herniation was the result of a prior nonindustrial incident or a subsequent industrial incident. The claimant argued that the herniation resulted from the industrial incident and was an industrial injury or, alternatively, that the industrial incident aggravated the previous herniation, making the herniation an industrial injury. It was determined that the herniation resulted from the nonindustrial incident and the symptomatic aggravation from the industrial incident was insufficient to make the herniation an industrial responsibility.

In this case, the claimant does not argue that the symptomatic aggravation of her underlying myofascial syndrome causes that condition itself to become an industrial injury. Instead, the claimant argues that the symptomatic aggravation is, in and of itself, a compensable injury. Since the claimant in *New Pueblo* did not present this argument, that decision is not applicable.

■ Petitioners next argue that there was no accident since the claimant did not experience an organic or structural change in her condition. The claimant responds by denying the need to show an underlying organic change. An injury is caused by accident when either "the external cause or the resulting injury itself is unexpected or accidental." *Paulley v. Industrial Commission,* 91 Ariz. 266, 371 P.2d 888 (1962). In the present case, the external cause of the claimant's injury was her typing. The evidence at the hearing revealed that at the time of her initial employment with Mandex the claimant was not expected to type

much. It was certainly unexpected that workplace pressures would require her to perform sustained typing which, in turn, aggravated her pre-existing myofacial syndrome. Therefore, the claimant's injury was caused "by accident" within the meaning of our workers' compensation law.

Since there was an injury by accident with compensable consequences within the meaning of workers' compensation law, it is necessary to address petitioners' second argument. Petitioners contend that the claimant's injury was "purposely self-inflicted" since she was aware that she was disabled from typing but nevertheless engaged in typing. Because the claimant was aware of her physician's admonitions and the consequences of performing typing activities but nonetheless consciously continued such activities, petitioners argue that her conduct broke the chain of causation and the claimant's injury is noncompensable. In line with this argument, petitioners contend that the legislature by choosing the words "purposely self-inflicted" within A.R.S. § 23–1021(A), rather than "intentionally" or "willfully" intended to provide a modicum of protection for an employer in circumstances such as those presented in this case. We disagree.

A.R.S. § 23–1021(A) provides that every employee who is injured by an accident arising out of and in the course of his employment shall be entitled to compensation for his loss, unless the *injury* was purposely self-inflicted. Other forms of fault do not affect compensability. For example, an injury is compensable even though the claimant was careless or even reckless. *Ortega v. Ed Horrell & Son,* 89 Ariz. 370, 362 P.2d 744 (1961); *L.B. Price Mercantile Co. v. Industrial Commission,* 43 Ariz. 257, 30 P.2d 491 (1934).

The focus of A.R.S. § 23–1021(A) is on the injury, not the act which results in the injury. This distinction is important since an employee may intend to perform the act which results in his injury, but presumably does not actually intend to injure himself or herself. There is a presumption that a claimant does not intend to injure himself or herself. *Cf. Wood v. Industrial Commission,* 108 Ariz. 50, 492 P.2d 1157 (1972) (presumption in favor of a love for life and accidental death versus suicide); *Lopez v. Kennecott Copper Corp.,* 71 Ariz. 212, 225 P.2d 702 (1950) (presumption against self-maiming). This is true regardless of how negligent or inadvisable the claimant's conduct may have been. *Goodyear Aircraft Corp. v. Industrial Commission,* 62 Ariz. 398, 158 P.2d 511 (1945).

In the case before us there is ample evidence which negates petitioners' contention that claimant's injury was purposely self-inflicted within the meaning of A.R.S. § 23–1021(A). Dr. Glow testified that he did not believe claimant was purposely trying to hurt herself on the job. Claimant testified that she was not trying to purposely hurt herself by typing but that she felt it was necessary for her to type because there were projects that had to be done, deadlines to be met and there was a lack of typing help. It further appears that claimant attempted to avoid any further problems related to typing by having the typewriter removed from her desk. Her supervisor subsequently leased another typewriter and placed it in claimant's work area. Petitioners' argument that claimant's injury was "purposely self-inflicted" is untenable in face of the record.

Although petitioners raised this affirmative defense below, the administrative law judge did not specifically address this issue in his award or on subsequent administrative review. Since the administrative law judge found a compensable claim, we must assume that he rejected petitioners' affirmative defense that claimant's injury was "purposely self-inflicted" and accepted the testimony of claimant and her treating physician that she did not purposely try to injure herself. *Cf. Pearce Development v. Industrial Commission,* 147 Ariz. 582, 712 P.2d 429 (1985) (findings implicit in an administrative law judge's award).

In summary, the claimant suffered an exacerbation of the symptoms of her myofascial syndrome by reason of her work-related activities. That exacerabation resulted in additional medical treatment and increased disability. The exacerbation of symptoms is a compensable injury. The injury was not "purposely self-inflicted." The award of the Industrial Commission is affirmed.

FROEB and BROOKS, JJ., concur.