823 P.2d 1295

SAMARITAN HEALTH SERVICES,
Petitioner Employer,

Samcor, now known as the Samaritan
Foundation, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Olga Holbert, Respondent Employee.

No. 1 CA–IC 89–100.

Court of Appeals of Arizona,
Division 1, Department A.

May 28, 1991.

Reconsideration Denied July 10, 1991.

Review Denied Feb. 19, 1992.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by J. Victor Stoffa, Phoenix, for petitioners Employer and Carrier.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Chris T. Johnson, Phoenix, for respondent Employee.

OPINION

CLABORNE, Presiding Judge.

The question presented here is whether an injury which occurs while one is engaged in a work-related function, but which results from the worker's physical condition and an activity which involves no strain greater than that which one would experience in a normal nonemployment setting is a compensable injury. We find that it is.

I

In August 1988, when respondent employee, Olga Holbert, was 54 years old, she sustained an injury to her left knee while bending to perform a filing task. She timely protested the denial of her claim for workers' compensation.

At the compensability hearing, Ms. Holbert acknowledged having had left knee injuries in 1975, 1986 and 1987. The first injury required surgery and resulted in a

rateable permanent impairment. The 1986 injury, which also involved the left ankle, required medical treatment and resulted in some time loss from work. She last received medical treatment for this knee injury in February 1988. She was not questioned about the specific effects of the 1987 injury.

Ms. Holbert had worked for Samaritan since 1985. In December 1987, Samaritan transferred her to a sedentary clerical position in its radiology department because her left ankle could not tolerate the standing required by her normal food preparation work. She normally worked at her desk and only rarely performed filing tasks requiring stooping or squatting. On August 3, 1988, however, because of a staff shortage, she was asked to do filing work. This required her to reach a file located on a floor-level shelf while checking other records she was carrying in her other hand. She testified that she acted cautiously because of her preexisting impairment, but as she moved toward the floor, she felt her left knee pop and she experienced acute pain. She ultimately underwent arthroscopic surgery.

No medical testimony was presented at the hearing. Rather, Samaritan claimed that its expert would testify that claimant's previous left knee injuries predisposed her to further injury, but that the August 1988, bending or stooping motion was a contributing cause of her current knee symptoms. Ms. Holbert, on the other hand, claimed that her expert would testify that although she had a preexisting left knee impairment, the work-related activity had caused a new injury.

The administrative law judge (ALJ) found that "while in the process of bending/stooping/squatting (which is not really clear), to obtain ... files from the lower drawer, [employee] felt a 'popping' sensation in her left knee, and the immediate onset of a burning type pain...." He also found that this specific incident and the underlying weakness of the left knee jointly caused the acute pain and swelling, which in turn required medical treatment and resulted in increased disability. The ALJ concluded that Ms. Holbert had suffered a compensable new injury for which Samaritan was wholly responsible.

Samaritan requested administrative review, arguing that successive injury principles were inapplicable because Ms. Holbert's injury did not arise out of her employment with Samaritan:

> This was not ... a case involving simply "liability preference". It is rather our contention that, where a preexisting infirmity such as claimant here had, when coupled with later employment activity that involved no unusual stress, untoward motion, or exertion in excess of that which would occur in ordinary employment and nonemployment life, results in additional symptoms requiring medical treatment, then, such employment activity, under a proper constitutional construction of the "arising out of" clause of A.R.S. § 23–1021, as necessarily limited by the language of the Constitution ... does not constitute a compensable event.

The ALJ issued a decision upon review responding to Samaritan's arguments. He concluded that the additional symptoms arose out of the employment because the work activity causally contributed to these symptoms: "this medical causal relationship ... essentially, per se, establishes the necessary 'arising out of' requirement." The ALJ then characterized the real "thrust" of Samaritan's position to be a denial that the "relatively nominal stooping/squatting activities ... were sufficient to constitute a recognizable compensable 'injury by accident' within the scope of the Act...." Samaritan then brought this special action.

II

Samaritan primarily argues that to satisfy the "arising out of employment" requirements of Article 18, § 8 of the Arizona Constitution and A.R.S. § 23–1021 in cases where a personal condition and a work-related activity jointly cause an injury, the risk of injury from the employment must be greater than the risk associated with nonemployment activities.

■ Article 18, § 8 provides, in pertinent part:

> The Legislature shall enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor in all public employment ... and in such private employments as the Legislature may prescribe *by which compensation shall be required to be paid ... by his employer, if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof....*

Ariz. Const. art. 18, § 8 (1925) (emphasis added). This constitutional provision does not grant power to the legislature, but rather directs it to exercise power it already possesses. *Goodyear Aircraft Corp. v. Industrial Comm'n*, 62 Ariz. 398, 408, 158 P.2d 511, 515 (1945). In addition, this provision does not restrict the legislature in its inherent powers to go beyond the terms of the constitution in finding injuries by accident compensable. *Id. See also Kilpatrick v. Superior Court*, 105 Ariz. 413, 466 P.2d 18 (1970).

Based on this constitutional directive, the legislature enacted A.R.S. § 23–1021 which provides compensation for "accident[s] arising out of and in the course of" the claimant's employment. A.R.S. § 23–1021(A). The phrase "arising out of" refers to the origin or cause of the injury. *Circle K Store No. 1131 v. Industrial Comm'n*, 165 Ariz. 91, 93–94, 796 P.2d 893, 895–96 (1990) (citing *Murphy v. Industrial Comm'n*, 160 Ariz. 482, 485, 774 P.2d 221, 224 (1989)). "In the course of" refers to the time, place, and circumstances of the accident in relation to the employment. *Circle K*, 165 Ariz. at 94, 796 P.2d at 896 (citing *Goodyear*, 62 Ariz. at 411, 158 P.2d at 519). While each of these elements must be independently satisfied, they must also be considered as a whole to determine whether the employee falls within the scope of the statute. *Nowlin v. Industrial Comm'n*, 167 Ariz. 291, 293, 806 P.2d 880, 882 (App. 1990), *petition for review denied* (Mar. 19, 1991).

■ This case presents the question whether an injury jointly caused by a personal condition and work-related activity which involves no strain greater than that occurring in a normal nonemployment setting arises out of employment. Courts have generally applied four theories to determine whether an injury arises out of employment: 1) the peculiar risk test, which requires the claimant to show that the source of the injury must be in its nature peculiar to the employment;[1] 2) the increased risk test, which requires that the employment cause an increased exposure to a risk which is qualitatively not peculiar to the employment;[2] 3) the actual risk test, in which it is immaterial that the risk is common to the public, if it is in fact a risk of the particular employment;[3] and 4) the positional risk test, in which the injury is compensable if it would not have occurred but for the fact the employment placed the employee in a position where he or she was injured.[4] 1 A. Larson, *Workmen's Com-*

---

1. The peculiar risk test is now virtually obsolete. 1 A. Larson, *Workmen's Compensation Law* §§ 6.10, 6.20 (1990).

2. In a recent case, the supreme court stated that while the increased risk test is the prevalent test in most states, it is not the test in Arizona. *Circle K*, 165 Ariz. at 94 n. 2, 796 P.2d at 896 n. 2. Although this statement is dicta, it nevertheless provides guidance to the meaning of the "arising out of employment" requirement. *See Brown v. State*, 17 Ariz. 314, 152 P. 578 (1915). It is not clear, however, from either this statement or from *Circle K* whether the increased risk test does not apply at all in Arizona or whether it does not apply only in cases where there is no personal condition contributing to the injury.

3. This court recently held that actual risk satisfied the "arising out of employment requirement" when activity necessary to perform the employer's work is the sole cause of the injury. *Nowlin*, 167 Ariz. at 295–96, 806 P.2d at 884–85.

4. The Arizona Supreme Court recently held that in the case of a neutral injury, the positional risk doctrine applies. *Circle K*, 165 Ariz. at 96, 796 P.2d at 898.

*pensation Law* §§ 6.10 to 6.50 (1990). *See Nowlin,* 167 Ariz. at 293, 806 P.2d at 882. The necessity that work be a contributing factor decreases across the spectrum from the peculiar risk test (the risk is particular to that employment) to the positional risk test (mere presence on the job is sufficient). *See Nowlin,* 167 Ariz. at 293, 806 P.2d at 882.

In an employment setting, an employee is exposed to different categories of risks: risks distinctly associated with the employment; risks personal to the employee; and "neutral" risks, those having no particular employment or personal character. 1 A. Larson, *supra,* § 7.00. This case involves a mixed risk, one in which a personal cause and an employment cause combine to produce the harm. *Id.* § 7.40. In this category, the employment must be a contributing factor. *Id.* The extent of employment contribution that is required depends on which test applies, the increased risk test (the risk of injury from the work-related activity must be greater than the risk associated with everyday living) or the actual risk test (the risk of injury must be in fact a risk of that employment).

The ALJ found that Ms. Holbert's prior left knee injury was one of the causes of this industrial injury and that her "bending/stooping/squatting activities" were likewise a contributing cause. The ALJ applied the actual risk test to conclude that Ms. Holbert's injury arose out of her employment. He stated:

> it is not a question of what stooping/squatting the applicant might, or might not, have done at home or elsewhere, but what she did, in fact, do at work, i.e., stoop/squat to open a file drawer during her work activities....

In our review of this matter, we consider whether the ALJ's conclusion was correct as a matter of law. *Cf. Finnegan v. Industrial Comm'n,* 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988).

 The fundamental purpose of workers' compensation laws is to shift the burden of loss of work-related accidents and disease from the individual employee to the consumer. *Ohlmaier v. Industrial*

*Comm'n,* 161 Ariz. 113, 115, 776 P.2d 791, 793 (1989). These laws should be liberally construed to effectuate their ultimate purpose. *Id.* at 116, 776 P.2d at 794 (citing *Nicholson v. Industrial Comm'n,* 76 Ariz. 105, 108, 259 P.2d 547, 550 (1953)).

Courts in Arizona originally treated the question of whether an injury caused jointly by a work-related activity and a personal condition was compensable as an accidental injury problem. The courts generally reasoned that the injury was not compensable because it did not result from an "accident" as required by A.R.S. § 23–1021(A). *See, e.g., Hartford Accident & Indemnity Co. v. Industrial Comm'n,* 66 Ariz. 259, 186 P.2d 959 (1947); *Phelps–Dodge Corp. v. DeWitt,* 63 Ariz. 379, 162 P.2d 605 (1945); *Mountain States Telephone & Telegraph Co. v. Industrial Comm'n,* 61 Ariz. 436, 150 P.2d 355 (1944). The Arizona Supreme Court, however, amended this line of authority when it concluded that an injury is accidental if either the cause or the result is unexpected. *Paulley v. Industrial Comm'n,* 91 Ariz. 266, 272, 371 P.2d 888, 892 (1962). In the present case, the ALJ found that Ms. Holbert sustained an injury by accident by performing the necessary function of her filing activities. We agree. To say that the injury in the present case was accidental, however, does not answer the question of whether it arose out of the employment.

Samaritan argues that to satisfy the statutory requirement that the injury arise out of employment in cases where a personal condition and a work-related injury combine to cause the injury, the risk of injury from the work-related activity must be greater than the risk of injury associated with nonemployment activities. Several Arizona cases indicate, however, that in such cases, it is not necessary that the employment create an increased risk of injury as long as the employment contributes to the injury.

In *McNeely v. Industrial Comm'n,* 108 Ariz. 453, 454, 501 P.2d 555, 556 (1972), an employee, who had been taking medication for a heart condition and had suffered a heart attack, suffered a subsequent heart

attack and died while working. The court of appeals denied compensation to the employee's family because:

> [T]here was no showing ... that his activity at work placed a greater strain on his already damaged heart than any other normal non-work activity. Thus, from a medical standpoint, his work "aggravated" his post-infarction condition, but such an "aggravation" from a legal standpoint was not sufficient to place him within the ambit of the protection of this state's Workmen's Compensation Act.

*McNeely*, 17 Ariz.App. 185, 190, 496 P.2d 611, 616 (1972). The supreme court vacated the court of appeals decision and held that there was sufficient causal connection between the employment and the employee's death because the employee's work-related activity accelerated his heart attack. *McNeely*, 108 Ariz. at 456, 501 P.2d at 558.

In *Murphy v. Industrial Comm'n*, the supreme court again indicated that the risk of injury from the employment does not have to be greater than the risk in nonemployment activities. 160 Ariz. 482, 486, 774 P.2d 221, 225 (1989). In *Murphy*, the employer was forced by financial consideration to lay off or transfer employees to different departments. *Id.* at 483, 774 P.2d at 222. Mr. Murphy was notified that he was to be transferred and endure a one-third pay cut. *Id.* The court held that Mr. Murphy's injury sustained from a fall after he was notified of the transfer and pay cut was an accident arising out of and in the course of employment. *Id.* at 486, 774 P.2d at 225. The court, quoting *Kelly's Case*, 394 Mass. 684, 686–87, 477 N.E.2d 582, 584 (1985), stated:

> it is settled law that an employer takes his employee "as is," that is, with whatever peculiar vulnerabilities to injury the employee may have, and that *"an identifiable incident or strain need not be unusual or severe to support compensation if the particular employee succumbs to it." Zerofski's Case*, [385

Mass. 590, 593, 433 N.E.2d 869, 871 (1982)].

*Id.* (emphasis added).

Similarly, in *Division of Vocational Rehabilitation v. Industrial Comm'n*, an employee, with a preexisting back injury, sustained further back injury while bending over to pick up a piece of scrap metal. 125 Ariz. 585, 586, 611 P.2d 938, 939 (App. 1980). The court of appeals, agreeing with the hearing officer, found that a compensable accident had occurred. *Id.* at 588, 611 P.2d at 941. It stated:

> The hearing officer correctly decided that the incident was an accident. It is unnecessary for the incident (bending action) to be unexpected or extraordinary. It is sufficient that the consequences of the incident (the acute lumbar strain) are unforeseen or uncommon. An injury is caused by an accident within the Workmen's Compensation Act when either the external cause or the resulting injury itself is unexpected or accidental. *See Paulley v. Industrial Comm'n*, 91 Ariz. 266, 371 P.2d 888 (1962).
>
> The second problem, which the hearing officer did not specifically address, focuses on the required relationship between the risk giving rise to the injury and the employment. *It is unnecessary for the employment to create a special risk of injury. See Pauley v. Industrial Comm'n*, 109 Ariz. 298, 508 P.2d 1160 (1973). *The employer takes the employee as he finds him. See Employers Mutual Liability Insurance Co. of Wisconsin v. Industrial Comm'n*, 17 Ariz. App. 516, 498 P.2d 590 (1972). It is sufficient that this bending action while engaged in welding activity increased the risk of injury to respondent. The accident, therefore, arose out of the employment.

*Id.* (emphasis added).

Samaritan argues that the statement in *Division of Vocational Rehabilitation* that the bending action increased the risk of injury to the respondent supports its argument that the increased risk test should apply here. We do not agree. *Division of Vocational Rehabilitation* held

that the bending welder was doing no more on his job than he might have done off the job. In this case, the respondent-clerk was doing no more on her job than she might have done at home. In neither case did the employment increase the risk of injury, and in both cases the accident arose out of the employment.

■ Based on the above cases, we conclude that the actual risk test applies to determine whether an injury arises out of employment where a work-related activity and a personal condition combine to cause an injury. It is not necessary to show that the risk of injury from the work-related activity was greater than the risk of injury in nonemployment activities.[5]

In both *Industrial Indemnity v. Industrial Comm'n* and *Sacks v. Industrial Comm'n*, this court indicated that there must be a risk of injury from a work-related activity which was greater than the risk of injury from a nonemployment activity before one could conclude the injury arose out of employment. *Industrial Indemnity*, 162 Ariz. 503, 784 P.2d 709 (App. 1989); *Sacks*, 13 Ariz.App. 83, 474 P.2d 442 (1970). These cases, however, can be easily distinguished from this case. In *Industrial Indemnity*, the court found that increased risk was present because of the nature of the work-related activity, not that increased risk was necessary. 162 Ariz. at 507, 784 P.2d at 713. *Sacks* did not involve a work-related activity, but rather a personal comfort activity. 13 Ariz.App. at 84, 474 P.2d at 443.

Samaritan argues that article 18, § 8 of the Arizona Constitution limits the application of the statutory arising-out-of-employment requirement. According to article 18, § 8, the test to determine whether an accident arises out of employment is whether an accident is caused in whole or in part, or

contributed to, by a necessary risk or danger of the employment, or a necessary risk or danger inherent in the employment. *Goodyear*, 62 Ariz. at 409, 158 P.2d at 516. As stated in *Goodyear*, the standard is *not* whether the employment increased the risk of injury or whether, by reason of the employment, the employee is more exposed to injury than others not so engaged. *Id.* While the statutory requirement is broader and may apply to accidents which do not satisfy the constitutional requirement, the injury sustained by Ms. Holbert satisfies both the constitutional and statutory arising-out-of-employment requirements.

We find that the ALJ correctly concluded that actual risk is sufficient to satisfy the arising out of employment requirement when a personal condition and a work-related activity jointly cause the injury. We accordingly affirm the award.

EHRLICH and KLEINSCHMIDT, JJ., concur.

---

5. *Pauley v. Industrial Comm'n,* provides additional support for this position. 109 Ariz. 298, 301, 508 P.2d 1160, 1163 (1973). In that case, the supreme court, in interpreting the "going and coming" rule, stated that compensation for industrial accidents is not dependent on special risks or danger to which the employee may be exposed. The supreme court specifically overruled *McCampbell v. Benevolent & Protective Order of Elks,* 71 Ariz. 244, 254, 226 P.2d 147,

153 (1950) (injury resulting from an accident does not arise out of employment unless employee is subjected to some special risk or danger on the employer's premises) and expressly disapproved of *City of Phoenix v. Industrial Comm'n,* 104 Ariz. 120, 449 P.2d 291 (1969) and *Inman v. Industrial Comm'n,* 9 Ariz.App. 156, 450 P.2d 122 (1969). *Pauley,* 109 Ariz. at 301, 508 P.2d at 1163.